**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Howard McDougall, trustee, Plaintiffs,**

v.

**ROBINSON CARTAGE COMPANY, Defendant.**

No. 93 C 0644.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 2, 1994.

Terence George Craig, James Patrick Condon, Central States Law Dept., Rosemont, IL, for plaintiffs.

Robert L. DeJong, Stephen J. Mulder, Dale R. Rietberg, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, MI, Michael Inman, Michael Inman & Associates, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central

States" or "Fund") brought this action to vacate an arbitration award in favor of defendant Robinson Cartage Company ("Robinson") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1401(b)(2). This matter is before the court on the parties' cross-motions for summary judgment. For the reasons explained below, plaintiffs' motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

## Background

It is undisputed that from 1965–1975, Robinson was a construction industry employer. However, in 1976, defendant began working in the steel hauling business, which is a non-construction industry, while continuing in the construction industry. The non-construction business proved unsuccessful, and in 1983, Robinson closed its steel hauling operation and returned its focus to the construction industry. However, closing the steel hauling business resulted in a 70 percent decline of defendant's contributions to plaintiff Fund over a three year period. Since ERISA provides that an employer is liable for partially withdrawing from a pension plan if the employer's contributions in a plan year decline by 70 percent,[1] Central States assessed partial withdrawal liability of $631,722.51 against Robinson.

Robinson objected, arguing that partial withdrawal liability should not have been assessed against it because it was exempt from liability as a construction industry employer under 29 U.S.C. § 1388(d).[2] To qualify for this exemption, Robinson had to show that "substantially all" (at least 85 percent)[3] of the employees for whom it contributed to the Fund performed work in the building and construction industry.[4] Also, the parties agreed that the best way to make this determination was to assess Robinson's contribution base units ("CBUs"), the measure of work upon which contributions to the plan are based.[5]

After some preliminary hearings, the parties stipulated to the amount of Robinson's CBUs over the 1975 through 1985 period, and the number of these CBUs that were construction and non-construction related. A summary of this stipulation is shown below:

| YEAR | CONSTRUCTION INDUSTRY CBUs | OTHER CBUs | TOTAL | PERCENT CONSTRUCTION INDUSTRY CBUs |
|---|---|---|---|---|
| 1975 | 965 | 100 | 1064 | 90.6% |
| 1976 | 1093 | 803 | 1896 | 57.6% |
| 1977 | 1414 | 1596 | 3010 | 47% |
| 1978 | 2085 | 2934 | 5019 | 41.5% |
| 1979 | 2000 | 3948 | 5948 | 33.6% |
| 1980 | 2090 | 3327 | 5417 | 38.6% |
| 1981 | 2272 | 1305 | 3577 | 63.5% |
| 1982 | 1935 | 187 | 2122 | 91.2% |
| 1983 | 985 | 161 | 1149 | 86% |
| 1984 | 1065 | 73 | 1138 | 93.6% |
| 1985 | 1329 | 50 | 1379 | 96.4% |

1. *See* 29 U.S.C. § 1385(a)(1).

2. In 1980, the Multiemployer Pension Plan Amendments Act ("MPPAA") amended ERISA to provide an exemption from withdrawal liability for employers who work in the building and construction industry. 29 U.S.C. § 1383(b)(1). A building and construction employer qualifies for this exemption if "substantially all" the employees covered under the plan perform work in the building and construction industry, and the plan is amended to include the exemption. 29 U.S.C. §§ 1383(b)(1)(A), (B). Central States amended its plan to exempt construction industry employers in 1982.

3. Although the statute does not define "substantially all," the Seventh Circuit has defined it as 85% or more. *Continental Can Co., Inc. v. Chicago Truck Drivers,* 916 F.2d 1154, 1160 (7th Cir.1990).

4. *See* 29 U.S.C. § 1383(b)(1)(A).

5. Each CBU reflects the work performed by each employee per week. CBUs are multiplied by an agreed rate to determine the amount of contributions owed for a given time.

After stipulating to these facts, the parties agreed that the key issue was which time period the "85 percent substantially all" test should be applied to in determining whether Robinson qualifies as a construction industry employer. The parties then submitted the matter to arbitration pursuant to 29 U.S.C. § 1401(a)(1). Without addressing the questions presented, the arbitrator, Steven E. Schanes, held that Robinson was exempt from withdrawal liability pursuant to 29 U.S.C. § 1383(b)(1).[6]

Central States appeals. It argues that Robinson cannot escape partial withdrawal liability because it was not a construction industry employer at the relevant time.

### Standard of Review

▮ This court has the authority to "enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2). Section 4221(c) provides that findings of fact made by the arbitrator are presumed correct, and are rebuttable only by a clear preponderance of the evidence. 29 U.S.C. § 1401(c). However, an arbitrator's conclusions of law are subject to *de novo* review. *Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 999 (7th Cir.1993); *Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 211 (7th Cir.1989).[7] An arbitrator's interpretation of a statute is a legal determination subject to the full scrutiny of the reviewing court. *Central States, S.E. and S.W. Areas Health and Welfare Fund v. Cullum Cos.*, 973 F.2d 1333 (7th Cir.1992). Therefore, this court will review the arbitrator's interpretation of § 4203 (the building and construction industry exemption) and other statutory provisions under the *de novo* review standard.

▮ In addition, the court notes that both parties have moved for summary judgment. Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a summary judgment motion, the court must review all evidence, draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

### The Arbitrator's Decision

In analyzing the issues presented by this case, Arbitrator Schanes first outlined a history of the case and the relevant law. (Arbitration Award, Pl.'s Mem., Ex.A at 1–4). He then noted the parties' stipulated chart, the question presented,[8] and the arguments made by both sides. (*Id.* at 4–5). However, instead of interpreting the language of § 4203(b)(1) according to the stipulated facts and arguments of the parties, the arbitrator considered the "threshold question of: Congressional reasoning and purpose underlying the construction industry full and partial withdrawal liability exemption provisions of the MPPAA." (*Id.* at 5). After quoting portions of the Senate and House reports, the arbitrator concluded:

> Congress was concerned about the adverse effect on a multiemployer plan of: (1) a long-term reduction in an employer's contribution base and (2) the possibility that

---

**6.** From 1983 to 1985 (3–year testing period), Robinson's CBUs were less than 30% of the CBUs for its high base year, the average of 1979 and 1980. Here the high base year was 5682 CBUs, and the CBUs for 1983–85 were 20.2%, 20%, and 24% respectively. The plan year is 1985, and withdrawal dates back to 1983, the date of withdrawal for calculation of liability. 29 U.S.C. § 1386(a)(1)(B). Thus defendant meets the terms of partial withdrawal liability. However, Robinson qualifies as a construction industry employer if 85% of the employees for whom it contributes to the plan perform work in the building and construction industry.

**7.** Mixed questions of law and fact are reviewed under the clearly erroneous standard. *Chicago Truck Drivers v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1410 (7th Cir.1989).

**8.** Specifically, the arbitrator noted: "The question which both parties have addressed is: What is the basis for determining whether Robinson Cartage qualified as a construction industry employer?" (Arbitration Award, Pl.'s Mem., Ex. A at 5).

752

an employer would seek to avoid withdrawal liability by maintaining a token number of employees covered under that plan, while continuing in non-covered business, with a substantial majority of its employees, within the geographical area covered by the plan.

(*Id.* at 9). The arbitrator then determined that Robinson's business should be evaluated according to these two considerations.

In so doing, the arbitrator considered evidence submitted by Robinson at a preliminary hearing which was not stipulated to by the parties, and relied principally on a bar chart reflecting Robinson's annual gross income.[9] Using this bar chart and the stipulated CBU chart, the arbitrator created his own tables of defendant's income, and concluded from these tables that Robinson had always been a construction industry employer, and that the 1976–1982 steel hauling period was a "hump" in defendant's history as a construction industry employer. (*Id.* at 15 ¶ 3). The arbitrator also reasoned that since defendant entered the non-construction industry in 1976 before the MPPAA was enacted, defendant could have had no knowledge that expanding its business might result in partial withdrawal liability if the business were to fail. (*Id.* ¶ 5). Consequently, the arbitrator concluded that Robinson was exempted from withdrawal liability. Having found Robinson exempt, the arbitrator found it unnecessary to consider the parties' arguments concerning the appropriate time period for determining whether Robinson was an exempt construction industry employer.

### Discussion

Central States contends that the arbitrator erred in several respects. First, plaintiffs contend that the arbitrator erroneously considered the legislative history of the withdrawal liability provision before looking at the plain language of the statute. Central States also argues that it was improper for the arbitrator to ignore the questions presented to him by the parties, and to rely on Robinson's chart which was not evidence. In addition, plaintiffs dispute the arbitrator's

conclusion that defendant's six years in the steel hauling business was a mere "hump" in its history as a construction industry employer, not warranting the assessment of partial withdrawal liability. Lastly, plaintiffs note that defendant's motives or knowledge are not relevant under 29 U.S.C. § 1383(b)(1), and there is no allegation that defendant has acted with improper motives in violation of 29 U.S.C. § 1392(c). (Pls.' Mem. at 10–12). The court rules as follows.

### Statutory Language

▮ The plain language of a statute is the best evidence of its meaning and the most reliable indicator of congressional intent. *Cullum,* 973 F.2d at 1339. Thus, it is well settled that the court must first look to the plain meaning of the statute when interpreting its meaning. *See e.g., Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir.1987); *Central States, S.E. & S.W. Areas Pension Fund v. Bellmont Trucking Co.,* 788 F.2d 428, 433 (7th Cir.1986). Moreover, the words of the statute should be given their ordinary, common meaning. *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1085 (7th Cir. 1984). The court should only look to legislative history when the statute is ambiguous. *Meredith,* 833 F.2d at 654.

▮ The ERISA provision at issue here is § 4205 which provides that there is a partial withdrawal if:

There is a 70–percent contribution decline for any plan year if during each plan year in the 3–year testing period the employer's contribution base units [CBUs] do not exceed 30 percent of the employer's contribution base units for the high base year.... (i) The term "3–year testing period" means the period consisting of the plan year and the immediately preceding 2 plan years. (ii) The number of contribution base units for the high base year is the average number of such units for the 2 plan years for which the employer's contribution base units were the highest within the 5 plan years immediately preceding the beginning of the 3–year testing period.

9. Central States expressly stated in the record that it did not admit to the accuracy of defen-

dant's exhibits which were submitted at the preliminary hearing.

29 U.S.C. § 1385(b)(1)(B)(i), (ii). As noted previously, withdrawal liability "imposes on the withdrawing employer a share of the unfunded vested liability proportional to the employer's share of contributions to the plan during the years of its participation." *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust*, —— U.S. ——, ——, 113 S.Ct. 2264, 2273, 124 L.Ed.2d 539 (1993). However, § 4203, which is made applicable to a partial withdrawal under § 4208(d)(1),[10] explains that

> in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a ... withdrawal occurs only ... if—
>
> (A) substantially all of the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry....

29 U.S.C. § 1383(b)(1)(A). In short, these provisions make clear that Robinson owes partial withdrawal liability unless it qualifies as a building and construction industry employer.

However, these provisions do not give clear guidance for determining the status of an employer like Robinson, who changes from a non-construction employer to a construction employer (using the 85% test) as a result of its partial withdrawal from the plan. In this regard, Robinson argues that since § 4203(b)(1)(A) uses the present tense,[11] withdrawal liability should be considered on the date that partial withdrawal is determined, 1985, or in the alternative, over the three year test period for determining withdrawal liability, 1983–1985.

In contrast, Central States contends that both of these approaches are misleading and would allow Robinson to avoid liability by relying on the result of its withdrawal from a non-construction industry: becoming a construction industry employer. Consequently, plaintiff argues that the more appropriate time period is 1978–1982, the five year period prior to the "trigger year" of withdrawal (1983) in which the employer's contribution base level is measured. *See* 29 U.S.C.' § 1386(a)(2)(B)(ii). Alternatively, plaintiff concludes that the entire eight year period in which partial withdrawal is determined would be appropriate, 1975–1982.[12]

██ After considering these arguments in light of the statutory language, the court finds that § 4203 is ambiguous. Although this provision is written in present tense, the court is not persuaded that the statutory intent for determining the construction industry exemption is clear. The court agrees with plaintiff that this "plain meaning" interpretation of the language would lead to a rather absurd result because an employer like Robinson that leaves the construction industry for a period of time, only to be unsuccessful at a completely different business, would be able to avoid mandated partial withdrawal liability resulting from its decision to enter a non-exempt industry.[13] A

---

**10.** Robinson emphasizes the language in § 4208 which provides:

> An employer to whom section 1383(b) of this title (relating to the building and construction industry) applies is liable for a partial withdrawal only if the employer's obligation to contribute under the plan is continued for no more than an insubstantial portion of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required.

29 U.S.C. § 1388(d)(1). However, the court agrees with Central States that this provision is not particularly helpful here because the issue, as framed by the parties, is "whether Robinson Cartage qualified as a construction industry employer." (Arbitration Award, Pl.'s Mem., Ex. A at 5).

**11.** In particular, § 4203 states that withdrawal occurs if "substantially all of the employees with respect to whom the employer *has* an obligation to contribute under the plan *perform* work in the building and construction industry.... 29 U.S.C. § 1383(b)(1)(A) (emphasis added).

**12.** As noted previously, the arbitrator ignored both of these arguments and relied heavily on the fact that Robinson had been a construction industry employer from 1965–75 and from 1982–88. The arbitrator then concluded that 1976–81, the six years where Robinson was heavily involved in the steel hauling business, was a mere "hump" in Robinson's history as a construction industry employer. (Arbitration Award, Pls.' Mem., Ex. A at 15).

**13.** In other words, as Central States notes, "Robinson argued to the arbitrator that by shutting down most of its non-construction industry operations it became a construction industry employer." (Pls.' Mem. at 14).

plain meaning interpretation should not be taken to an absurd result when there is an alternative interpretation which is more consistent with legislative purpose. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982). Therefore, it is necessary for this court to consider the congressional intent and the legislative history to determine if Congress intended to make employers like Robinson liable for partial withdrawal.

The MPPAA was designed "1) to protect the interests of participants . . . in financially distressed multiemployer plans and 2) to ensure benefit security to plan participants." H.R.Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S.C.C.A.N. 2918, 2939. Congress chose to protect the plan from harm by requiring a withdrawing employer to pay part of its unvested retirement benefit funds at the time of withdrawal.

However, as the arbitrator noted, Congress also recognized that employers in fields such as the construction industry typically do not adversely affect a plan when they withdraw. The construction industry typically works on a project-by-project basis, making its contributions to the plan fluctuate constantly. Also, when one employer finishes a project, the employees will typically be hired by another construction industry employer, thus keeping the labor pool relatively steady. (Arbitration Award, Pls.'s Mem., Ex. A at 8) (citing *Pension Benefit Guaranty Corp.* Advance Notice of Proposed Rulemaking, 47 Fed.Reg. No. 188, 42588 (1982)). Thus, in addition to the concerns which the arbitrator identified, Congress also intended to impose withdrawal liability on employers who decreased their contributions for employees working in non-construction industries which did not have such a fluctuating nature.

■ Therefore, this court concludes that Congress intended to impose withdrawal liability in a situation like the closing of Robinson's steel hauling industry. Section 4203(b)(1) *only* excuses a decline when a substantial number of employees work in construction. Although Robinson qualified as a construction employer during the three year test period of determining partial withdrawal, its withdrawal was due to a decline in a non-construction industry. It would appear contrary to congressional intent to allow Robinson to escape liability for its withdrawal from the steel hauling industry by focusing on its present status as a construction industry employer. In addition, contrary to what the arbitrator concluded, there is no indication from the statutory language or the legislative history that the construction industry exemption was designed to allow an employer to experiment with non-exempt businesses, and then escape liability because it was "at base" a construction industry employer.

Therefore, the only remaining question is the appropriate period to determine when an employer in a situation like this qualifies as a construction industry employer. For the reasons explained above, the court rejects Robinson's argument that 1985 is the appropriate year. However, defendant is correct in noting that plaintiffs' suggestion of a five or eight year period is not compelled by the statutory language. Moreover, the parties have not provided, nor has this court uncovered a precedent for deciding this period. The only case addressing a similar issue is in *Raytheon Co. v. Central States Pension Fund,* No. 89 C 861 slip op., 1989 WL 117919 (N.D. IL, Sept. 27, 1989) (Kocoras, J.).

In *Raytheon,* the court had to determine whether an arbitration decision finding that Raytheon was not liable for a partial withdrawal should be enforced or vacated. *Id.* at 1. There, one of the key disputes was whether the arbitrator erred by using construction CBUs as opposed to the raw number of employees in determining whether the employer was entitled to a construction industry exemption. Among other things, the pension fund argued that "counting actual employees would only make sense if employees were counted on a single 'snapshot' date." *Id.* at 13. In analyzing the issues presented, the *Raytheon* court emphasized that the partial withdrawal provision, § 4205, uses an eight year period to determine whether a partial withdrawal has occurred. *Id.* at 3 (citing 29 U.S.C. § 1385(b)). Based upon this fact, the district court concluded:

the exposure period [for determining the exemption] is suggested by the way that

liability is determined. In the case of determining whether a partial withdrawal has occurred, it is an eight-year period that is at issue in every case. The presence of this eight-year period suggests that it should form the exposure period for the snapshot.... [T]he counting of employees is to be done for the eight-year period under scrutiny to see whether the construction exemption applies.

*Id.* at 14.

■ Although *Raytheon* is not directly on point, the court agrees that § 4205's eight year period is an appropriate time period in which to determine whether Robinson was a construction industry employer because this period is used to assess partial withdrawal liability.[14] *See* 29 U.S.C. § 1385(b). Furthermore, the court notes that the present tense used in § 4203 could also refer to the entire period of withdrawal, which covers an eight year time frame under § 4205(b).[15]

■ In the instant case, the relevant eight year period would be 1975–1982. Robinson does not dispute that its construction contributions averaged only 49% during this period. This percentage fails the Seventh Circuit's 85% test. Consequently, Robinson would not be entitled to the construction industry exemption, and is therefore, liable for partial withdrawal liability.

### Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment is granted, and defendant's motion for summary judgment is denied. This case is remanded to the arbitrator to calculate Robinson's liability.

14. This court also rejects defendant's argument that this analysis is inconsistent with withdrawal liability generally. Since partial withdrawal occurs over a continuing period, unlike a complete withdrawal (§ 4203) or a sale of assets (§ 4204) which occur at a single point in time, it makes sense to analyze the period which is used in determining partial withdrawal liability.

15. The court is mindful of defendant's point that Congress could have supplied a five or eight year time frame if it had wished to because there are several statutes which do specify various time frames. However, based upon the statute and legislative history, the court finds it appropriate to supply an eight year period here which is consistent with other partial withdrawal liability provisions.