55 F.3d 1318
 Pens. Plan Guide P 23910R
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
a pension trust, and Howard McDougall, trustee,
Plaintiffs-Appellees,
v.
ROBINSON CARTAGE COMPANY, a Michigan Corporation, Defendant-Appellant.
 No. 94-3321.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 9, 1995.
Decided May 30, 1995.
 
 Terence G. Craig (argued), James P. Condon, Central States, Southeast & Southwest Area Pension Fund, Law Dept., Rosemont, IL, for plaintiffs-appellees Central States, Southeast and Southwest Areas Pension Fund, a pension trust, and Howard McDougall, trustee.
 Robert L. DeJong, Stephen J. Mulder (argued), Dale R. Rietberg, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, MI, for defendant-appellant Robinson Cartage Co., a Mich. corp.
 Before FAIRCHILD, CUMMINGS and CUDAHY, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Robinson Cartage Company (Robinson) is a member of Central States Pension Fund (Central States or the Fund), a multi-employer pension plan governed by ERISA. In 1983, Central States assessed liability against Robinson for partial withdrawal from the Fund under ERISA, 29 U.S.C. Sec. 1385(a). Robinson contested this assessment, claiming that it was immune from partial withdrawal liability under an exemption for construction industry employers found under 29 U.S.C. Sec. 1388(d). The case was submitted to arbitration and the arbitrator ruled that Robinson was exempt from partial withdrawal liability. The Fund then appealed to the district court and both parties moved for summary judgment. The district court reversed, finding Robinson liable for the withdrawal and granting Central States' motion for summary judgment. We affirm but with an analysis somewhat different than that of the district court.
 
 I. BACKGROUND
 
 2
 From 1965-1975, Robinson was a construction industry employer, engaged in the transportation and rigging of heavy construction equipment. In 1976, however, the company also began to haul steel. This foray into the steel hauling business, a non-construction industry, continued in conjunction with Robinson's construction business for seven years. Unfortunately, the steel business proved to be unprofitable for Robinson and by 1983 it had closed its steel hauling business and returned to its primary business in construction.
 
 
 3
 Throughout this time, Robinson was a member of the Central States Pension Fund. Robinson's participation in the steel hauling business increased both the number of its employees and its contributions to the Fund. Correspondingly, when it discontinued its steel hauling operation, its Fund contribution base units (CBUs) (the total number of weeks worked by the eligible employees) declined sharply. In each of the years 1983, 1984 and 1985, Robinson's CBUs were 70% less than in the period used as a base, which will be explained below.
 
 
 4
 Under ERISA, a decline of seventy percent continuing over three consecutive years subjects an employer to liability for partial withdrawal.[1] See 29 U.S.C. Sec. 1385(a). Central States therefore assessed $63,722.51 in partial withdrawal liability as of December 31, 1983 against Robinson. Robinson objected to this assessment, arguing that it was exempt from partial liability because of special provisions for construction industry employers under 29 U.S.C. Sec. 1388(d).
 
 
 5
 To qualify for this construction exemption however, Robinson must establish that "substantially all" of the employees for whom it contributed to the Fund were building and construction industry employees. 29 U.S.C. Sec. 1383(b)(1)(A), (B). The parties have agreed to use CBUs to measure Robinson's contributions. They have also stipulated to the amount of Robinson's CBUs over the 1975-1985 period and to the number of these CBUs that were, respectively, construction and non-construction related. See Mem.Op. 864 F.Supp. 748, 750. Finally, the parties agree that the dispositive issue in the case is the time period to which the "substantially all" test should be applied. However, they dispute whether "substantially all" of the employees must be construction workers for all three of the years measuring the decline in contributions, for only the last year or for some other time period.
 
 II. DISCUSSION
 
 6
 Under ERISA, 29 U.S.C. Sec. 1385(a) & (b), an employer is subject to partial withdrawal liability at the end of the third year if there is a 70% decline in contributions continuing for each of three consecutive years. A 70% decline is calculated by looking as a base at the five years immediately preceding the start of the three years of decline. 29 U.S.C. Sec. 1385(b). To determine the contribution level from which to measure a decline, one must average the number of CBUs from the two highest years out of these five years. 29 U.S.C. Sec. 1385(b)(1)(B)(ii). Thus, a total period of eight years is examined to determine whether a partial withdrawal has occurred.
 
 
 7
 An exemption from partial withdrawal liability exists, however, for those employers for whom "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry." 29 U.S.C. Sec. 1383(b)(1)(A). The statute does not define "substantially all," but this court has defined it as 85% or more. Continental Can Co. v. Chicago Truck Drivers, 916 F.2d 1154, 1160 (7th Cir.1990). The statute also does not define the time period during which the "substantially all" restriction applies. We are therefore given no guidance as to whether this restriction applies during only the last year of the three year testing period, during all three years, or during the entire eight years involved in the calculation of the partial withdrawal. Nor, to our knowledge, has any other court of appeals addressed this issue.
 
 
 8
 Robinson argues that the relevant time period is the year in which it incurred liability--1985, the end of the third year of decline or the "trigger year." The parties agree that over 85% of Robinson's CBUs were construction related during 1985. Thus, if only that year is considered, they agree that Robinson qualified then as a construction business.
 
 
 9
 Central States, however, argues that the "substantially all" requirement should apply to the entire eight years used to calculate partial withdrawal. But the parties disagree over whether or not the use of this eight year time period would result in liability. On average over the eight years, 68% of Robinson's yearly CBUs were construction related. But, if we look at each year separately, half of the years were over 85% and half were under. Robinson argues that the statute endorses a year by year analysis, and thus that this "tie" should be broken in Robinson's favor.
 
 
 10
 Alternatively, the Fund argues that the relevant period is the one adopted by the district court--1975-1982. These eight years are the period used to calculate the amount of liability under plan regulations and 29 U.S.C. Sec. 1391. The district court adopted this period rather than the eight years between 1978 and 1985 which determine whether partial withdrawal has occurred. Under the district court's formula, the parties agree, Robinson would be liable for partial withdrawal.
 
 
 11
 Both parties stipulated to the relevant facts and both moved for summary judgment. As the only issue to be addressed is purely a question of law, the district court reviewed it de novo, as do we. Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp., 872 F.2d 208, 212 (7th Cir.), cert. denied, 493 U.S. 847, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989).
 
 A. Plain Meaning
 
 12
 It is well established that we must first look to the plain language of the statute when interpreting its meaning. See, e.g., Central States, et al. v. Cullum Companies, 973 F.2d 1333, 1339 (7th Cir.1992); Trustees of Iron Workers Local 473, 872 F.2d at 213. Robinson argues that the question may be answered by this simple approach. Robinson contends that because the statute is worded in the present tense,[2] the "substantially all" test applies only to the end of the last year of the three year testing period. In other words, Robinson claims that Congress' use of the present tense must indicate its intent that "substantially all" of the employees be construction related at the time when liability is actually assessed--the end of the three year trigger period.
 
 
 13
 We do not accept this argument and instead find the statute to be ambiguous. The simple use of the present tense in the statute is not enough to indicate which time period should be used,[3] and Robinson's construction does not yield a logical result. See, Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"). If the "substantially all" requirement is to apply solely at the end of the three year testing period, then any construction company that chooses to dabble in a non-construction business would only have to keep a few construction workers on staff to avoid partial withdrawal liability. Even if a company built up pension liabilities based on non-construction work and then dropped its contribution level (presumably when all the non-construction workers were terminated), a few construction workers could remain, allowing the company to claim that "substantially all" of its current work was construction related. Such a result is senseless and, we believe, against the intent of the construction exemption.[4]
 
 B. Legislative Intent
 
 14
 Because we find the statute ambiguous, we must look to the legislative history to determine Congress' intent in creating the construction exemption. Trustees of Iron Workers Local 473, 872 F.2d at 213. Congress created the partial withdrawal liability section of ERISA because a "major and sustained reduction in an employer's contribution base results in harm to the plan." Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 14 (Comm. Print 1980); see also H.R.Rep. No. 869, 96th Cong., 2d Sess., pt.1, at 68 (1980). However, a special exemption was created for the construction industry because
 
 
 15
 The building and construction industry was identified as one industry in which withdrawals typically do not adversely affect the plan unless the employer continues to do the same work in the same area. In this industry, work is generally on a project-by-project basis, an employer's covered employment may fluctuate drastically, and when a project ends an employer's workers will normally remain in the labor pool available for employment by other contributing employers. Because of these factors, Congress established special rules for the construction industry.
 
 
 16
 Advance Notice of Proposed Rulemaking, 47 Fed.Reg. 42588 (1982).
 
 
 17
 As the House Report explained,
 
 
 18
 In the construction industry, the funding base of the plan is the construction projects in the area covered by the collective bargaining agreements through which the plan is maintained. An individual employee will typically work for tens or even hundreds of different employers over his or her working career, and the volume of work for a given employer will often fluctuate greatly from year to year. These normal events do not pose an undue threat to a plan as long as contributions are made for whatever work is done in the area.
 
 
 19
 H.R.Rep. No. 869, 96th Cong., 2d Sess., pt.1, at 75 (1980).
 
 
 20
 Thus the exemption was created because of the frequent fluctuation in contributions by construction employers, and because this kind of construction-related fluctuation does not cause problems for the Fund. However, Robinson's decline in contributions did not result from the normal, expected fluctuations of construction work. Robinson reduced its contributions as a direct result of its failure in the steel hauling business--a business which the parties agree is not covered by the construction industry exemption. It therefore does not violate congressional intent to hold Robinson liable for partial withdrawal arising from its departure from the steel business.[5]
 
 
 21
 We must still determine, however, what time period should govern Robinson's qualification for the construction exemption. If we look only at the last year of the three year liability test period, we face the possibility discussed earlier that any company that maintains a token number of construction employees could qualify for the construction exemption. Such a result violates the intent of Congress in crafting the partial withdrawal and construction exemption provision. Using a three year period creates similar concerns. Congress established a complicated eight year formula to determine when a partial withdrawal had occurred. 29 U.S.C. Sec. 1385(b). It deemed that eight years were needed to determine whether a sufficiently significant reduction in contributions had occurred and specifically set that time period as the measure of partial withdrawal. We conclude that that eight year period is also a logical measure for an exemption from partial withdrawal liability. The eight year period is appropriate to determine whether a company is truly a construction business undergoing the expected and excepted flux of the construction industry, or whether the reduction in contributions is due to other non-construction related activities.[6]
 
 
 22
 We do not imply that this conclusion will be appropriate in all factual scenarios. Here Robinson's reduction in contributions was caused by its entry into and subsequent withdrawal from the steel hauling business. The withdrawal had nothing to do with Robinson's construction work. Other situations that do not involve similar forays into unrelated industries may require different results. We are attempting to divine the unspoken intent of Congress as it applies to this specific situation--an inquiry necessarily turning on particular facts. Congress' presumed intent in other fact situations may differ materially as the facts change. However, where, as here, a company significantly changes the nature of its business, the employer must establish that it was in the construction business during most if not all of the eight years involved in the determination of partial withdrawal.
 
 C. Robinson's Liability
 
 23
 Robinson's liability will thus be determined by its yearly CBUs in each of the eight years 1978-1985 (to which the parties have stipulated). Looking at those years, we find the following percentages of construction related CBUs:
 
 
 24
 Percent
 Construction Construction
Year CBUs Other CBUs Industry CBUs
1978 2085 2934 41.5%
1979 2000 3048 33.6%
1980 2090 3327 38.6%
1981 2272 1305 63.5%
1982 1935 187 91.2%
1983 985 161 86%
1984 1065 73 93.6%
1985 1329 50 96.4%
Total 13761 11985 yearly average: 68%
 
 
 25
 Robinson is correct that there are four years where the contributions were 85% or more construction related. However, there were also four years during which the contributions were much less than 85% construction related. When we average the percentage of construction related contributions from each year over the eight year period, we find that an average of only 68% per year of Robinson's CBUs were construction related. Further, if we compare all of Robinson's construction related CBUs over this eight year period (13,761), against the total number of CBUs for that period (25,746), we find that only 53% of Robinson's total CBUs were construction related in the period 1978-1985. Either way, Robinson does not come close to meeting the requirement that 85% of its CBUs be construction related during most or all of the eight year period.
 
 
 26
 We thus conclude that Robinson did not meet the "substantially all" test during all or even most of the period from 1978 to 1985. In addition, in those years in which Robinson did meet the "substantially all" test because of an increase in the percentage of construction related contributions, it did so only because of a decrease in non-construction related contributions. Robinson's decrease in Fund contributions is due to its withdrawal from the steel hauling business, not to the fluctuations of the construction market. Thus, construction workers did not comprise "substantially all" of its workers during the eight year period which we deem to be the appropriate measure in this situation. We therefore conclude that Robinson does not qualify for the construction exemption from partial withdrawal liability for its reduction in contributions that resulted from its withdrawal from the steel hauling business.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Partial withdrawal occurs when a contributing employer has not completely withdrawn from the Fund but has undergone a long term reduction in its contribution base. Partial withdrawal liability is imposed because such a reduction has an adverse effect on the funding of the plan. Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 14 (Comm. Print 1980). Withdrawal liability and partial withdrawal liability are intended to offset the loss of contribution base to fund the benefit obligations the Fund has undertaken at higher employment levels
 
 
 [2]
 Section 1383(b)(1)(A), made applicable to the partial withdrawal situation under Sec. 1388(d)(1), provides that withdrawal occurs only if:
 substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry ...
 (emphasis added).
 
 
 [3]
 Robinson appears to argue that the statute also "suggests" that the three year trigger period could be another relevant time here. See, e.g., Appellee's Br. at 32. To the extent that Robinson advances this argument, we note that a statute whose "plain meaning" suggests two different time periods is hardly clear and unambiguous
 
 
 [4]
 As the district court and Central States noted, Robinson is essentially arguing that by shutting down most of its non -construction industry operations it became a construction industry employer. Mem.Op. at 756, n. 13
 
 
 [5]
 See Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 15 (Comm. Print 1980) (under the construction exemption, "partial withdrawal occurs only when an employer has substantially shifted its work mix ... so that only an insubstantial portion of such work in the jurisdiction is covered [by the exemption]")
 
 
 [6]
 We note that the district court adopted an eight year period, but not the eight year period used to calculate whether partial withdrawal has occurred. Instead, the district court counted eight years back from the beginning of the three test years, or to the period 1975-1982, instead of to the period 1978-1985
 The district court did not give a specific reason why it chose to displace the relevant eight years in this way, other than that Robinson should not be able to "rely[ ] on the result of its withdrawal from a non-construction industry." Mem.Op. at 753. However, the time period the district court chose is apparently the time period used by the Fund to calculate the amount of liability for partial withdrawal, rather than to establish the occurrence of partial withdrawal and we assume that this may have played some part in the district court's reasoning. (See Appendix E, Rules and Regulations Pertaining to Employer Withdrawal Liability, Appellant's App. at 17, and, 29 U.S.C. Sec. 1391(c)).
 The eight year period applied by the district court, we believe, is not as true to the intent of Congress as the eight year period used to determine if partial withdrawal has occurred. The fact of liability must first be determined before the amount of liability can be addressed. Here the construction exemption relates directly to the fact of liability, and we thus find the appropriate period for determining if "substantially all" of the employees are construction workers to be the eight years used to determine the fact of liability, 1978-1985.