97 F.3d 1454
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marge Marie ANDERSON, Defendant-Appellant.
 No. 95-3996.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 7, 1996.
Decided Sept. 19, 1996.
 
 Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Defendant Marge Anderson,[1] while a bookkeeper and accountant for Kaiser Precision Tools, used its funds to write 60 fraudulent checks totaling approximately $545,000, at least once using the U.S. mail in furtherance of the scheme. Anderson entered into a written plea agreement and was convicted of mail fraud, in violation of 18 U.S.C. § 1341. She was sentenced to 42 months' imprisonment, three years' supervised release, and was ordered to pay $500,000 in restitution. We affirmed that judgment from the bench following oral argument, and now follow with an order explaining our reasoning more fully.
 
 
 2
 Defendant appeals her sentence on the basis that the district court committed clear error in refusing to grant a reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. The district court's factual findings, based on credibility determinations, must be sustained unless they are clearly erroneous. U.S. v. Taylor, 72 F.3d 533, 549 (7th Cir.1995); U.S. v. Beal, 960 F.2d 629, 632 (7th Cir.1992). The record more than sufficiently supports the district court's refusal to grant the § 3E1.1 reduction.
 
 
 3
 The district court expressed its concern at the initial sentencing hearing held on April 14, 1995 that Anderson had concealed the $100,000, stating that defendant may not have "squander[ed] it all by gambling and it should be around someplace." As a result of this uncertainty, the district court asked the government to obtain more information regarding whether Anderson in fact spent or concealed the $100,000. ("If you are spending that kind of money in Las Vegas, what I wonder is whether there would be some documentary evidence of the fact that you did so.") The government was unsuccessful in its attempts to locate documentary evidence as to the amount of money Anderson spent at various casinos.
 
 
 4
 It is Anderson's general burden to demonstrate acceptance of responsibility. U.S. v. Schuler, 34 F.3d 457, 460 (7th Cir.1994). In considering whether a defendant has met this burden, the sentencing court may appropriately consider whether she assisted in returning the proceedings of her criminal conduct to the victim.[2] U.S.S.G. § 3E1.1 (note 1) (defendant did not provide "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense"). The district court was entitled to disbelieve defendant's assertion that she went "one last time" to Las Vegas with the $100,000 to try and win back Kaiser's money.
 
 
 5
 Anderson argues that her obviously penniless state demonstrates that she did not conceal the money. She points to "multiple physical and mental ailments, including diabetes, for which she could afford no treatment or medication." However, the district court was not required to believe her, especially after the government informed the court that Anderson had canceled trips to Las Vegas and the Caribbean with friends after turning herself in to the authorities, but only after the government informed her attorney that the trip money should be applied toward restitution.
 
 
 6
 The district court was also entitled to rely on the fact that it is extremely difficult to find acceptance of responsibility when Anderson began the embezzlement in April 1991, when she had to begin paying $1,000 per month of restitution as part of the sentence for a prior conviction for embezzlement. See U.S. v. Gordon, 64 F.3d 281, 282, 285 (7th Cir.1995) (while released on bond from charge of eight bank robberies, defendant committed a ninth bank robbery; he "did not let his bond, electronic anklet; or the impending plea bargain cramp his style"; district court properly found defendant's conduct was not consistent with acceptance of responsibility); U.S. v. Bean, 18 F.3d 1367, 1369 (7th Cir.1994) (district court could properly refuse third-level reduction for acceptance of responsibility where it was defendant's third conviction for defrauding a financial institution; defendant "feels at liberty to put other financial institutions at risk when he is trapped for cash"); U.S. v. Reed, 951 F.2d 97, 99-100 (6th Cir.1991) (defendant's credit card fraud while awaiting sentencing for conviction of credit card fraud evidenced his refusal to accept responsibility).
 
 
 7
 In addition, it was not clear error for the district court to believe that Anderson did not turn herself in for the reasons she stated ("couldn't deal with all the guilt and pressure of my thefts and I decided to expose my embezzlement"), and instead disclosed her crime only because of an impending IRS audit. One week before the scheduled audit, Anderson quit her job, knowing that she had left an obvious paper trail (having written most of the fraudulent checks to herself) and thus her embezzlement would be discovered. The court could properly find that "when the certainty of discovery was obvious to her, what she did instead of conserving what remained of the money she had stolen, she promptly commenced a program of disposing of it." The district court added:
 
 
 8
 [D]iscovery was certain through no act of the defendant but through the inevitable discoveries that would be made in the course of the tax audit. * * *
 
 
 9
 The paper trail here must have been staggeringly incriminating, all of these checks and all of these fictitious payees, a total of 60 checks totaling $545,000.
 
 
 10
 So the conclusion I draw from this, unless these facts are wrong, is that the defendant really had no choice but to admit her guilt here. This is not a case where a defendant confronted with a doubtful charge concedes her guilt and thereby compromises something that she has; namely, a chance of acquittal.
 
 
 11
 This is a case in which the defendant for practical purposes had no chance whatsoever of acquittal in any criminal charge that was brought on account of these criminal acts that were about to be discovered by the Internal Revenue Service. (4/14/95 hearing, Tr. 3-4)
 
 
 12
 Defendant did many of the things that courts look for in making an acceptance of responsibility determination. She was charged on December 16, 1994, entered a timely plea of guilty on January 6, 1995, and entered into a plea agreement on January 12, 1995. She retained an accountant to help her account for the thefts and expenditures. She also informed the IRS of the income she received from the thefts and filed amended income tax returns. Finally, she surrendered the balance of her pension plan (approximately $10,000), along with her real and personal property, for purposes of restitution, and assigned to Kaiser the majority of her interest in any award resulting from a civil wrongful death lawsuit concerning her brother. However, many of these acts carried little weight with the sentencing judge, since they were apparently made as the result of an agreement reached by Anderson and her former employer in connection with a state civil suit the employer filed against Anderson. See U.S. v. Hendrickson, 22 F.3d 170, 176 (7th Cir.1994) (rejecting civil forfeiture, in light of its involuntary nature, as basis for finding extraordinary acceptance of responsibility); U.S. v. Bean, 18 F.3d 1367, 1369 (7th Cir.1994) (settling a pending lawsuit does not demonstrate contrition or indicate a "willingness to adhere to political society's laws").
 
 
 13
 We conclude that the balance of factors relating to acceptance of responsibility strongly support the district court's decision to refuse the § 3E1.1 reduction for acceptance of responsibility.
 
 
 14
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Also known as Marguerite Marie Whittington
 
 
 [2]
 The record indicates that Anderson reported spending the embezzled money on items such as five luxury automobiles; computer equipment; $28,000 to her son to purchase a house where defendant lived with her girlfriend and her son; medical care for her mother and brother, both of whom died during this time; a $29,000 fish tank; and gambling trips to Las Vegas. The last method of spending, of course, is the most difficult to document