**UNITED STATES of America**

v.

**Anthony MENDOLA, Defendant.**

**No. 91 Crim. 1056(CBM).**

United States District Court,
S.D. New York.

Oct. 9, 1992.

OPINION RE SENTENCING

MOTLEY, District Judge.

BACKGROUND

On or about December 13, 1991, in the vicinity of 241 Fifth Avenue, New York, New York, an armored truck operated by the I.B.I. Security Service was parked while the two guards assigned to the truck attempted to deliver a tray containing $800,000 in cash from the Federal Reserve Bank to the Cho Hung Bank of New York. When one of the guards exited the truck and opened the side door, he was attacked by one of defendant's co-conspirators, who

took the money and entered a green station wagon nearby. The station wagon drove off as the second guard started shooting.

The guards chased the station wagon until they observed the wagon crash into a fire hydrant on 26th Street. At this point, one of the guards spotted a New York City police car in the vicinity and motioned for the officer to chase a car which he thought the robbers had taken once they had abandoned the station wagon. The chase ensued until police officers observed the second car, a late model white Thunderbird, in the vicinity of 12th Street between First and Second Avenues in Manhattan. Thereafter, the defendant, Anthony Mendola, was arrested while walking along First Avenue between 11th and 12th Streets and taken into custody.

Defendant pled guilty to Count 1, conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, and Count 2, armed robbery of the proceeds of a federally insured bank in violation of 18 U.S.C. § 2113(d). The remaining Counts 3 through 5 were disposed of by the Government's *nolle prosequi.*

In connection with the sentencing of Anthony Mendola on October 6, 1992, the court principally adopted the sentencing computations and recommendations of the probation officer under the United States Sentencing Guidelines ("Guidelines") as amended. Both the Government and defense counsel agreed with the probation officer's basic computation. A sentencing conference of record was held October 1, 1992, at which time the court considered and addressed the Government's requests for certain upward departures, which had been rejected by the probation officer. At the October 1 conference, the court also considered defense counsel's requests for certain downward departures from the probation officers determinations, which had likewise been rejected. Upon consideration of the foregoing, the court assigned an offense level of 33, down 2 levels from the probation officer's original determination of 35, thus subjecting defendant to incarceration for 135 to 168 months. Defendant was sentenced to 135 months. No fine was imposed. A special assessment of $50 each was made on Counts 1 and 2 and a special

supervised parole period of 3 and 5 years was imposed to run concurrently.

## SENTENCE DETERMINATION

A sentence of 135 to 168 months for an offense level of 33 has been determined by the court to be correct. *Sentencing Table,* U.S.S.G. § 5, at 280. Armed bank robbery is one of the more serious federal crimes. The serious nature of the crime is reflected by the Guidelines which sets a base offense level of 20 for armed bank robbery. U.S.S.G. § 2B3.1.

The probation officer added to the base level of 20 as dictated by the Guidelines as follows: Mr. Mendola robbed a federally insured financial institution of $800,000. Theft from a financial institution is a specific offense characteristic, calling for an increase in the base offense level by 2 levels. U.S.S.G. § 2B3.1(b)(1). A gun, taken from one of the guards by a co-conspirator, was used in robbing the armored truck, although not discharged. For the use of a firearm in the commission of the crime, the base offense level is increased by 6 levels. U.S.S.G. § 2B3.1(b)(2)(B). During Mr. Mendola's attempted escape, a law enforcement officer, Police Officer Lonetto, who had joined the chase, suffered injury to his neck in a car accident and, as a result, is no longer able to serve on the police force. Injury to a victim during the commission of the crime warrants an increase in the base of 4 levels. U.S.S.G. § 2B3.1(b)(3). During the robbery, a firearm was taken from one of the guards; this action warrants an increase in the base level of 1. U.S.S.G. § 2B3.1(b)(5). Finally, for the value of the currency taken from the armored truck, the base offense level is increased by 3 levels. U.S.S.G. § 2B3.1(b)(6).

*The Government's Position*

The Government sought to increase Mendola's base offense level by 7 rather than 6 because a firearm was not only used but discharged during the robbery. However, neither defendant nor his co-conspirator discharged the firearm. The gun was fired by one of the guards who was protecting the armored truck, and no one was injured. The court finds that Mr. Mendo-

la's offense level should not be increased due to the guard's discharging a weapon.

■ The Government also sought to increase Mr. Mendola's offense level due to alleged soft tissue injuries suffered by two police officers, Cummings and Coupalupa. Nevertheless, the Government failed to produce any written evidence of the nature and extent of those injuries although specifically requested to do so. A third officer, Officer Curry, received no injuries. Therefore no addition will be made to the base level due to injuries to Cummings, Curry, or Coupalupa.

■ Lastly, the Government argued that Mr. Mendola should be sentenced at the high end of his sentencing range because he allegedly attempted to obstruct justice by shaving his beard and mustache prior to a line-up. The Government, however, has no support for its assertion that the motivation for Mr. Mendola's shaving was an intent to obstruct justice. In fact, Mr. Mendola had already been photographed prior to the time that he removed his facial hair. There are not adequate circumstances to justify a finding that Mr. Mendola intended to obstruct justice. Therefore Mr. Mendola's shaving is not a consideration in assessing his sentence.

*The Defense's Position*

■ The defense argued that Officer Lonetto's injuries should result in defendant's offense level being increased by only 2 levels rather than 4 levels as recommended by the probation officer because officer Lonetto is not a "victim" as used in the Sentencing Guidelines § 2B3.1(b)(3). The defense argued that "victim" refers only to an individual injured during the principal crime and does not refer to those injured during flight.

The defense made comparisons to various other sections of the Guidelines to argue that "victim" should be interpreted narrowly so as not to include those injured during flight: the Guidelines § 2B3.1(b)(4) discusses sentencing adjustments for the abduction of any "person." The defense attempted to juxtapose a broad reading of "person" in that section with what it argued should be a narrow reading of "victim." There is no suggestion in the Guidelines, however, that the different language should be interpreted in this fashion or that the section on abduction, U.S.S.G. § 2B3.1(b)(4), is in any way related to armed bank robbery. Likewise the defense's references to the sections concerning unusually vulnerable victims, U.S.S.G. § 3A1.1 and attacks motivated by status, U.S.S.G. § 3A1.2, are not relevant to this case.

Instead of applying Guidelines § 2B3.1(b)(3), the defense asserted that the Guidelines § 3C1.2 "Reckless Endangerment During Flight" applied, calling for a 2 level increase in the base level rather than a 4 level increase as recommended by the probation officer for Lonetto's injury. However, application of the Endangerment During Flight section was not sought by the Government in this instance because the Application Note to that section explicitly states that when the Guidelines provide for an increase of 2 or more levels based upon the same conduct, the Endangerment During Flight section should not be applied. Here the victim injury enhancement of four levels has already been applied.[1]

Moreover, Officer Lonetto was a "victim" of Mr. Mendola's crime of armed bank robbery. Absconding with the money is a natural and expected part of the crime of armed bank robbery. Every armed bank robber knows that he will have to flee the

---

1. Perhaps it should be noted that the court has discretion in applying the Guidelines in individual cases. *United States v. Ramirez,* 792 F.Supp. 922, 923 (E.D.N.Y.1992) ("A court must exercise its 'independent power and responsibility' in determining the proper sentence in each case.") (quoting *United States v. Agu,* 763 F.Supp. 703, 704 (E.D.N.Y.1991). In fact, in *United States v. Andre Rogers,* 972 F.2d 489 (1992), the Second Circuit vacated and remanded the sentence of

the district court because the record indicated that the district judge erroneously believed that he lacked discretion in sentencing. *Id.* at 495 ("Where an appropriate basis for a departure is presented, but a sentencing court refuses to grant a departure under circumstances suggesting that the district court erroneously believed itself without authority to depart, remand is warranted.")

bank and that others may be injured in the flight process. Mr. Mendola and his co-conspirator had the getaway car waiting as part of their bank robbery plan. Mr. Mendola's actions in fleeing were part of the "relevant conduct" for purposes of sentencing and adjustments in that he was "in the course of attempting to avoid detection or responsibility for [his] offense." U.S.S.G. § 1B1.3(a). The defense's argument, that the Guidelines § 3C1.2 "Reckless Endangerment During Flight" should apply, fails because Officer Lonetto was actually injured while the robbery was still in progress. The money had not yet been recovered and defendant had not reached safe harbor, marking a break in the criminal action, prior to Officer Lonetto's injury. *See United States v. Grubczak*, 793 F.2d 458, 463–64 (2d Cir.1986) (describing the pursuit of armed robbers as a phase in the crime).[2]

Because the "hot pursuit" phase of the crime is part of the crime of bank robbery, the defense's argument that Officer Lonetto was not a victim was unpersuasive. Similarly, in *United States v. Muhammad*, 948 F.2d 1449, 1456 (6th Cir.1991), the defendant argued that a police officer injured in the escape phase of a bank robbery could not count as a "victim" pursuant to § 2B3.1(b)(3) on the theory that only employees of the bank or customers of the bank present during the actual robbery could be victims. The Sixth Circuit rejected this argument and held that "[a]s the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight. Thus, we find the language 'any victim' in § 2B3.1(b)(3) was meant to include any employee, bystander, customer, or police offi-

cer who gets assaulted during the bank robbery or during an attempted getaway." *Id.* Officer Lonetto was therefore a victim of defendant's crime of armed bank robbery, making the application of § 2b3.1(b)(3) and an increase by 4 levels appropriate.

■ The defense argued that the offense level should be reduced as to injuries suffered by Officer Lonetto because defendant was not the driver of the car used to escape and therefore was only a passive participant. The court holds, however, that there is no requirement that Mr. Mendola have been the driver of the car to be criminally responsible for injury caused by a co-conspirator. Mr. Mendola was a participant in the robbery and in the fleeing from the scene of the robbery with the money in tow and is therefore liable for the resulting injury to Officer Lonetto.

■ Finally, the defense argued that defendant's offense level should be adjusted downward by 3 levels for his acceptance of responsibility, as provided in a currently proposed amendment to the Guidelines, rather than 2 levels, as originally recommended by the probation officer and provided for in the Guidelines. Downward departure for acceptance of responsibility is in the discretion of the court. *Application Notes*, U.S.S.G. § 3E1.1 note 4. Mr. Mendola cooperated fully with the Government in proceedings concerning this matter. A case involving a conspiracy to commit armed bank robbery is of such seriousness and magnitude that it would typically require the expenditure of a significant amount of Government time and resources to prosecute the case. Mr. Mendola's complete cooperation with the Government eliminated the need for such expenditures and signals a step forward in his rehabilita-

---

**2.** Other Circuits concur in the view that flight is a part of the crime of armed robbery. *United States v. Martin*, 749 F.2d 1514, 1518 (11th Cir. 1985) (quoting *U.S. v. Willis*, 559 F.2d 443, 444 n. 5 (5th Cir.1977)) ("The crime of bank robbery under 18 U.S.C. § 2113(a) 'continues throughout the escape for purposes of characterizing the involvement of additional parties who knowingly and willfully join in the escape phase only.' "); *United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir.1981) ("The getaway is part of the robbery");

*United States v. Willis*, 559 F.2d 443, 444 (5th Cir.1977) (citations omitted) ("escape immediately following the taking is a necessary phase of most violent bank robberies—that is to say, the robbery is not a consummate transaction until the immediate removal phase comes to a halt."); *United States v. Jarboe*, 513 F.2d 33, 37 (8th Cir.1975) ("We now hold that the offense described in 18 U.S.C. § 2113(a) extends for a similar period—i.e. hot pursuit...").

**1068**

tion. Cooperation with the Government should be encouraged. Mr. Mendola's acceptance of responsibility therefore warrants a 3 level reduction.

## CONCLUSION

Given these considerations, Mr. Mendola is subject to an offense level of 33 which is equal to 135 to 168 months. The court sentences defendant to 135 months. The reasons for sentencing at the lower level are the following:

1. Defendant pled guilty and cooperated with the government;
2. Defendant had no prior juvenile or adult criminal convictions;
3. There is no evidence that defendant handled or fired a weapon;
4. All of the $800,000 was recovered;
5. Although a police officer was injured, no one was killed during the actual robbery and flight.

SO ORDERED.