IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-40351
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES RAY ROBERTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
February 11, 2000

Before BARKSDALE, BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant James Ray Roberts ("Roberts") appeals from the district court's imposition of the 120-month maximum sentence for a violation of 18 U.S.C. § 922(g)(1).  Because we find that the district court did not err in its calculation of the relevant offense level, we affirm.

## I.      Factual and Procedural Background

On November 23, 1997, Roberts and his cohorts Mark Ervin Thibodeaux ("Thibodeaux") and Jason Rhine ("Rhine") decided to ride their four-wheel all terrain vehicles ("ATVs") on private property in Cypress Lakes, Liberty County, Texas, and poach some wild hogs.  The owner of the aforementioned private property,

hearing shots and spotting the ATVs, called the Texas Parks and Wildlife game wardens.

Meanwhile, in another part of the forest, Liberty County Deputy Constable Kenneth Gray ("Deputy Gray") and his 16-year old son were heading home from deer hunting when they heard the call regarding the poachers. Responding to the call, Deputy Gray drove to Cypress Lakes. Upon hearing ATVs in the woods, Deputy Gray parked his truck, left his son inside it, and walked into the thicket alone.

He soon saw two ATVs approaching him. Realizing that the men nearing him were not game wardens, Deputy Gray knelt in the weeds, pulled out his badge and affixed it over his left-breast pocket. When the ATV carrying Roberts and Thibodeaux (and a dead hog strapped to its front rack) was approximately 3 feet away, Deputy Gray stood up and pointed his .357 handgun at them, saying "Stop. Liberty County Constable's Department." At that point, the other ATV, driven by Rhine, fled into the woods.

Deputy Gray fired one shot into the air and ordered Roberts and Thibodeaux to dismount the ATV and lie down on the ground with their hands behind their backs. Roberts and Thibodeaux complied. Deputy Gray then proceeded to handcuff Roberts, but had difficulty so doing because Roberts was wearing thick gloves. To better accomplish his task, Deputy Gray put his .357 handgun on the ground, and devoted both his hands to cuffing Roberts.

At that point, Thibodeaux grabbed the barrel of Deputy

Gray's handgun.  Deputy Gray reached for the grip of the gun, and the two struggled to gain control of it.  Thinking that Thibodeaux and Roberts meant to kill him, Deputy Gray fired two shots from his gun, in an attempt to empty it.  Roberts entered the fray, punching Deputy Gray in the face and flaying him with the handcuff Deputy Gray had managed to clasp about one wrist, until Roberts had broken Deputy Gray's nose and shut one of his eyes.

Thibodeaux broke Deputy Gray's hand, and, with the gun he had thereby captured, Thibodeaux beat Deputy Gray in the head five or six times, breaking his jaw, severing his ear, fracturing his skull and gashing his head.  This assault left Deputy Gray subdued and lying on his back; Roberts took the opportunity to ask Deputy Gray about the keys to the handcuffs and removed them from Deputy Gray's pocket.

Roberts and Thibodeaux then bound Deputy Gray's hands and feet together and tied him to a tree.  They told him that they were not going to kill him; they merely wanted to get away.  Taking the key to the handcuffs and Deputy Gray's handgun with them, they mounted their ATV and drove off into the woods.

After a time, Deputy Gray managed to untie himself, and he walked back to his truck.  Knowing his son was scared, he called out in the dark, "It's me, don't shoot."  Luckily, Deputy Gray's boy kept his wits about him, and had actually called for assistance upon hearing the scuffle and shots fired.  His son

then drove him to the guard station where Deputy Gray received medical attention.

Roberts and Thibodeaux's getaway was short-lived. Soon after the assault, their route took them past some alerted game wardens. After drawing their weapons and threatening to shoot, the game wardens finally convinced Roberts and Thibodeaux to stop. Roberts turned to Thibodeaux and said, "You should have shot that big son of a bitch when you had the chance." Presumably, he meant Deputy Gray.

The game wardens found two hunting rifles and the dead hog in the ATV. They also discovered Deputy Gray's gun, covered with blood, in Thibodeaux's pants. Roberts was still wearing the handcuffs on one wrist, but he had Deputy Gray's keys in his pocket. Both men were soaked with blood.

Roberts pled guilty to violating 18 U.S.C. § 922(g)(1), possession of a firearm by a felon. Because he used the firearm in furtherance of a robbery, because the victim was an officer of the law and because he had previously been convicted of aggravated rape and burglary, both crimes of violence, the Presentence Investigation Report ("PSR") recommended that Roberts receive the maximum sentence of 120 months. Roberts filed his objections to the PSR, but the district court rejected them in toto and adopted the PSR.

Roberts timely filed this appeal.

## II.    Standard of Review

When reviewing the district court's imposition of sentence, we apply de novo review to the lower court's interpretation of the Sentencing Guidelines and clear error review to its factual findings. See United States v. Rice, 185 F.3d 326, 328 (5th Cir. 1999). "A defendant's sentence must be upheld unless [he] demonstrates that it was imposed in violation of the law, was imposed because of an incorrect application of the guidelines, or is outside the range of applicable guidelines and is unreasonable." United States v. Morrow, 177 F.3d 272, 300 (5th Cir. 1999).

### III.    Discussion

Roberts advances numerous frivolous arguments and one question of first impression in this Circuit. We therefore write primarily to address Roberts's claim that the district court erred when it imposed a 7-level increase for the discharge of a firearm in connection with the robbery.

Roberts's objection to the 7-level increase[1] derives from the fact that Deputy Gray fired the weapon. Roberts argues that if Roberts's own sentence can be increased by Deputy Gray's

---

[1]    Just how and why § 2B3.1(b)(2) applies to this conviction requires a complicated explanation. Roberts pled guilty to violating 18 U.S.C. § 922(g)(1), possession of a firearm by a felon. Section 2K2.1 of the Sentencing Guidelines applies to the unlawful possession of firearms. Subsection (c) of that statute provides for a cross-reference to § 2X1.1 if the defendant's possession of the firearm was in connection with the commission or attempted commission of another offense. Section 2X1.1 applies to attempts, and subsection (a) of that statute directs that the base offense level of the substantive offense–here, armed robbery–applies. Therefore, the PSR looked to § 2B3.1, which provides for a base offense level of 20, and a 7 level enhancement if the firearm was discharged during the offense.

5

discharge of a weapon during a robbery, law enforcement officials will have an incentive to shoot at criminals during robberies in an effort to increase their sentences.

As it happens, the Circuits seem to be split on this question. In United States v. Gordon, 64 F.3d 281 (7th Cir. 1995), the Seventh Circuit confronted the situation where an armed guard in a bank told Kevin Gordon ("Gordon"), a bank robber, "Don't move, or I'll shoot." Gordon disregarded this instruction, and the armed guard shot him. The government argued that "because Gordon struggled with the security guard after being told to stop struggling or be shot, Gordon 'induced . . . or willfully caused' the discharge of a firearm." Id. at 283. The Seventh Circuit rejected this argument. It reasoned that both "induce" and "willfully cause" "contain an element of specific volition, an actual intent or desire that one's actions create the specific result." Id. "A criminal would have to be suicidal to intend that a guard discharge a firearm during a robbery . . . . [and] [w]e do not think the Guidelines were intended to cover such an extreme and unlikely possibility." Id. The court went further, though, and held that "a defendant may not properly be given a sentence adjustment under § 2B3.1 where a non-participant in the crime discharges a firearm." Id. at 284; see also United States v. Mendola, 807 F. Supp. 1063, 1064 (S.D.N.Y. 1992) (denying the enhancement where an armored truck guard discharged a firearm while pursuing the robbers).

6

The Eleventh Circuit split with the Seventh's broad holding in United States v. Williams, 51 F.3d 1004 (11th Cir. 1995), overruled on unrelated grounds in Jones v. United States, 119 S. Ct. 1215 (1999).  In that case, Alphonzo Leon Williams ("Williams") had attempted to carjack Scott Whitehead and Tim Donaldson ("Donaldson") at gunpoint.  Donaldson fired a pistol at Williams, who retreated.  The Eleventh Circuit held that, because Williams induced Donaldson to fire in self-defense, the discharge of the firearm was fairly attributed to Williams.  See id. at 1011; see also United States v. Triplett, 104 F.3d 1074, 1083 (8th Cir. 1997) ("The guidelines do not require that the defendant, as opposed to an accomplice or co-conspirator, have fired the weapon.  Rather, there merely must be evidence, as there is in this case, that a weapon was discharged during the robbery.").

Though Gordon and Williams diverge irreconcilably on the question of whether a defendant can be given a 7-level enhancement under § 2B3.1(b)(2) where a non-participant discharges the firearm, we feel that we are constrained by the plain language of § 1B1.3 to permit the enhancement on these facts.  Under § 1B1.3, Roberts is liable for "all acts and omissions . . . [that he] aided, abetted, . . . induced or willfully caused[.]"  Roberts unquestionably induced and willfully caused Deputy Gray to fire his handgun.  Thibodeaux had grabbed Deputy Gray's gun and Roberts was smashing Deputy Gray in

7

the face with his fists and the handcuffs he was wearing.  Deputy Gray feared for his life and sought to empty his weapon to prevent Roberts and Thibodeaux from using his own gun on him.  By aiding and abetting Thibodeaux in wresting control of the gun away from Deputy Gray, Roberts induced Gray to fire the gun into the ground, and the 7-level increase is therefore proper.

We emphasize that the Seventh Circuit in Gordon found that Gordon could not be said to have willfully caused the discharge of the firearm because he did not intend or desire that his specific actions (struggling with the armed guard) would give rise to the discharge of the firearm.  Here, on the other hand, we think it beyond question that Roberts's specific actions (punching Deputy Gray in the face) willfully caused Deputy Gray to fire his handgun.  Therefore, we find Gordon distinguishable, and hold, on these facts, that the 7-level enhancement is proper.

As mentioned previously, Roberts raised many other complaints on appeal.  He objected to the PSR's refusal to apply the base offense level applicable where the defendant possesses the firearm for a lawful sporting purpose, to a 2-level increase for possession of a stolen firearm, to a 4-level increase for possession of a firearm in connection with another offense, to the cross reference to the armed robbery statute, to a 4-level increase imposed because the victim sustained serious bodily injury, to a 2-level increase for physically restraining the victim to facilitate an escape, to a 1-level increase for

8

stealing the victim's firearm and finally, to a 3-level increase for the official status of the victim. Upon careful review of these claims, we deem them devoid of merit and frivolous. We therefore affirm.

## IV.    Conclusion

We hold that Roberts is properly accountable for the discharge of a firearm in the course of an armed robbery, where Roberts's actions induced the victim to fire the weapon. Because the district court did not, therefore, err in its application of the Sentencing Guidelines, we affirm Roberts's sentence.

AFFIRMED.