United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 19, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

**02-40598**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JESUS BENITEZ-TORRES,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Southern District of Texas
(C-01-CR-249-1)**

_____

Before SMITH and BARKSDALE, Circuit Judges, and FITZWATER,
District Judge[*].

PER CURIAM:[**]

Based on numerous issues, some of which are reviewed only for
plain error, Jesus Benitez-Torres challenges his conviction for
attempted murder of a Border Patrol Agent and his sentence for that
offense, as well as for two illegal alien-related offenses to which
he pleaded guilty. Primarily at issue are enhancements to Benitez'
base offense level under the Sentencing Guidelines. **AFFIRMED.**

---

[*]District Judge of the Northern District of Texas, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 26 July 2001, Benitez drove an automobile into the United States Border Patrol checkpoint near Falfurrias, Texas. In his vehicle were his minor daughter and three adults, two of whom were undocumented aliens. Border Patrol Agents questioned Benitez-Torres and the passengers about their immigration status; all claimed to be American citizens. Because the Agents doubted those claims, the vehicle was referred to the secondary inspection area. There, one of the adults admitted she was illegally in the United States; she was detained.

Because of this admission, Benitez was placed under arrest. The Agents ascertained Benitez had been previously deported. While his arrest was being processed, Benitez was restrained.

Benitez escaped and ran to his vehicle. A number of Agents pursued him. Before Benitez was able to close the driver's-side door, Agent Garcia reached through it to seize Benitez; Agent Cantu, through the rear driver's-side window to seize Benitez' chin.

Benitez accelerated the vehicle in reverse; another Agent fired a shot, striking Benitez in the hand. Meanwhile, Agent Garcia had been thrown to the ground by the open driver's-side door. The following occurred as Benitez continued in reverse at a "very high rate of speed": Agent Garcia was dragged for 40 feet by

the open door; and the driver's-side electric rear window closed, trapping Agent Cantu's right arm.

Agent Garcia was dislodged when Benitez' vehicle struck a vehicle belonging to the Green family; the impact turned the Greens' vehicle "almost ... 90 degrees". When Benitez hit that vehicle, Agent Cantu, trapped by the driver's-side rear window, was thrown backwards against the rear quarter panel of Benitez' vehicle. The Agent was then able to stand beside the vehicle, but with his right arm still trapped.

Immediately, Benitez drove forward at a "very high rate of speed". To prevent being dragged, Agent Cantu lodged his left foot inside the still-open driver's-side front door; he yelled at Benitez, telling him to stop and that Benitez was "going to kill [him]". Instead, Benitez continued accelerating (up to 70 miles per hour) and began to swerve in an apparent attempt to shake Agent Cantu off the vehicle.

With his left foot, Agent Cantu was able to depress the emergency brake; the vehicle began to slow. Benitez then began swerving toward the side of the road in an effort to brush the Agent against trees. Consequently, with his left arm, Agent Cantu began to wrestle for control of the steering wheel.

In response, Benitez, while still accelerating with his right foot, began to kick at Agent Cantu with his left. When this met with no success, Benitez stopped depressing the accelerator and

began kicking the Agent with both feet.  Finally, in fear for his life, Agent Cantu removed his weapon with his left hand and shot Benitez in the chest.  The vehicle coasted to a stop less than three-quarters of a mile from the checkpoint.

As a result of Benitez' conduct:  Agent Garcia received numerous bruises and abrasions and was hospitalized; one of the Greens' children bumped his face, causing a bloody nose; Agent Cantu received minor bruises; and operations at the checkpoint were disrupted.

Benitez was charged with:  (1) illegal transporting, and attempted illegal transporting, of an alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(ii) and 18 U.S.C. § 2; (2) illegal reentry into the United States, after having been deported following a felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1); (3) attempted murder of a Border Patrol Agent (Agent Cantu), in violation of 8 U.S.C. §§ 1113 and 1114; and (4) assault with a deadly weapon on a Border Patrol Agent (Agent Garcia), in violation of 18 U.S.C. § 111(a)(1) and (b).

Benitez pleaded guilty to the alien transportation and illegal reentry counts.  A jury convicted him of attempted murder; it acquitted him on the assault charge.

The presentence investigation report (PSR) grouped the alien transportation and attempted murder convictions, pursuant to Sentencing Guidelines § 3D1.2(c); the base offense level was 12.

4

The PSR recommended that the level be reduced by three because the transportation offense was not committed for profit.  *See* U.S.S.G. § 2L1.1(b)(1).

The PSR recommended that the base offense level be enhanced as follows:  by two, because Benitez had previously been convicted of a felony (illegal reentry in 1999), *see* U.S.S.G. § 2L1.1(b)(3); pursuant to Guidelines § 2L1.1(b)(4)(A), to 22, because a firearm was discharged during the offense; by two, to account for the risk of death or injury to non-Agents (the Green family) created by Benitez' conduct, *see* U.S.S.G. § 2L1.1(b)(5); by two, pursuant to Guidelines § 2L1.1(b)(6)(1), to account for the injuries caused Agents Garcia and Cantu; by three, because, "during the course of the offense or immediate flight therefrom", Benitez assaulted a law enforcement officer, thereby creating a "substantial risk of serious bodily injury", *see* U.S.S.G. § 3A1.2(b); by two, because Agent Cantu was physically restrained, *see* U.S.S.G. § 3A1.3; by two, for the endangerment of the Agents who pursued Benitez and Agent Cantu, *see* U.S.S.G. § 3C1.2; and by two, pursuant to § 3C1.1, to account for Benitez' obstruction of justice (attempt to flee prosecution for the illegal alien related charges).

As a result of the reduction, enhancements, and a multiple-count adjustment made pursuant to Guidelines § 3D1.4 (incorporating the illegal reentry offense), the recommended offense level was 35.

Benitez objected to the PSR and moved for a downward departure; the Government, for an upward departure. Benitez contended, *inter alia*: he did not *willfully* cause the firearm-discharge; the restraint enhancement was improper because restraint is an element of attempted murder and because the evidence did not show he willfully caused it; pursuant to Guidelines §§ 2L1.1(b)(5)(substantial risk to non-Border Patrol Agents — the Green family) and 3C1.2 (reckless endangerment to another in the course of fleeing), the enhancements "double counted" for the same conduct, *see* U.S.S.G. § 2L1.1 cmt. n.6; and the enhancements under the just-described §§ 3C1.2 (concerning those other than Agent Cantu, such as the Green family) and 3A1.2 (assault on law enforcement officer so as to cause substantial risk of injury) "double counted" for the same conduct, *see* U.S.S.G. § 3C1.2, cmt. n.1.

The district court overruled the objections except for double counting of §§ 2L1.1(b)(5) and 3C1.2. Benitez' resulting offense level was 33; with a criminal history of IV, this translated into an imprisonment range of 188 to 235 months. The district court departed upward and sentenced Benitez to 312 months in prison.

## II.

Benitez contends: (1) the failure to instruct the jury, *sua sponte*, on a lesser-included offense of attempted manslaughter constituted reversible plain error; (2) the offense level should

6

not have been enhanced for discharge of a firearm because Benitez did not willfully cause it; (3) enhancing pursuant to Guidelines §§ 3C1.2 and 3A1.2(b) constituted double counting; (4) the offense level should not have been enhanced for the restraint of Agent Cantu; (5) the upward departure constituted an abuse of discretion; and (6) in the light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional. Several of these contentions are reviewed only for plain error.

## A.

Concerning not instructing on attempted manslaughter, a lesser-included offense instruction may be given "if, but only if, (1) the elements of the offense are a subset of the elements of the charged offense, and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense and acquit him of the greater". *United States v. Lucien*, 61 F.3d 366, 372 (5th Cir. 1995). Generally, we review the first consideration *de novo*; the second, for abuse of discretion. *Id*.

Because Benitez did not request the attempted manslaughter instruction, we instead review only for plain error. *E.g.*, *United States v. Estrada-Fernandez*, 150 F.3d 491, 495 (5th Cir. 1998). For there to be plain error, the error must be "clear" or "obvious" and affect a defendant's substantial rights. Even then, we have discretion whether to correct the error; generally, we will do so only if it "seriously affect[s] the fairness, integrity, or public

7

reputation of judicial proceedings". *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995).

In urging reversible plain error, Benitez maintains a number of circumstances show he acted in "the heat of passion". *See United States v. Browner*, 889 F.2d 549, 552 (5th Cir. 1989). For instance, he testified: he fled out of fear that his daughter would be deported; he was shot in his hand and was afraid he would be shot by the Agents; and he had blurred vision and ringing ears. According to Benitez, such circumstances "throw into question" whether he acted with the requisite malice for attempted murder.

However, as the Government notes, Benitez testified at trial that he did not know Agent Cantu was trapped by the rear window. Obviously, it is not plain error not to instruct the jury on attempted manslaughter where a defendant never testified he attempted to kill in "the heat of passion" and testified, instead, that he did not know his actions had placed anyone in danger.

Alternatively, Benitez bases reversible plain error on not instructing on attempted *involuntary* manslaughter. To establish that such an offense even exists, Benitez cites only *United States v. Anderson*, 503 F.2d 420 (6th Cir. 1974). There was no "clear" or "obvious" error; the offense is not recognized in this circuit.

B.

Benitez challenges various aspects of his sentence, including enhancements to his base offense level, the upward departure, and the constitutionality of 8 U.S.C. § 1326(b)(1) and (2).

1.

Three enhancements are contested. A district court's application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *United States v. Gillyard*, 261 F.3d 506, 509-10 (5th Cir. 2001), *cert. denied*, 534 U.S. 1094 (2002).

a.

Concerning the firearm-discharge, and pursuant to Guidelines § 2L1.1(b)(4)(A), a six-level enhancement is proper if a weapon is discharged during the commission of the offense. If the resulting offense level is less than 22, however, it should be increased to that level. Pursuant to Guidelines § 1B1.3(a)(1)(A), Benitez is responsible only for those acts or omissions that he "induced ... or willfully caused". He claims the evidence does not show he willfully caused Agent Cantu to discharge his weapon.

*United States v. Roberts*, 203 F.3d 867 (5th Cir.), *cert. denied*, 530 U.S. 1238 (2000), held a defendant induced or willfully caused a *third party* to discharge a firearm when he caused the third party to fear for his life and discharge his firearm to prevent it from being used on him. Although Agent Cantu had no

9

reason to fear Benitez would use the Agent's firearm on the Agent, Agent Cantu testified that, in order to save his life, he felt he had no other option than to fire at Benitez. The district court did not clearly err in holding Benitez' actions willfully caused the Agent to discharge his firearm. *See Roberts*, 203 F.3d at 870.

b.

Benitez maintains the § 3C1.2 enhancement for reckless endangerment during flight was improper because: it was duplicative of the § 3A1.2(b) enhancement (assault on law enforcement officer so as to create substantial risk of bodily injury); and he did not willfully cause the endangerment to the Green family, the risk to whom formed the district court's rationale for the § 3C1.2 enhancement.

i.

The Guidelines provide: "Do not apply [the § 3C1.2] enhancement where ... another adjustment in Chapter Three[] results in an equivalent or greater increase in offense level solely on the basis of the *same* conduct". U.S.S.G. § 3C1.2 cmt. n.1 (emphasis added). Benitez contends the conduct underlying the §§ 3C1.2 and 3A1.2(b) enhancements was the same.

Our "same conduct" inquiry focuses "on the temporal and spatial distinctiveness or separateness of the acts [to determine] whether [Benitez'] conduct involves more than one culpable act". *Gillyard*, 261 F.3d at 511. *See also*, *United States v. Matos-*

10

*Rodriguez*, 188 F.3d 1300, 1309-12 (11th Cir. 1999), *cert. denied*, 529 U.S. 1044 (2000). In **Gillyard**, the defendant endangered numerous people in the course of a 32-mile automobile chase by police. In describing the sets of conduct that endangered police officers and construction workers, respectively, our court noted:

> Although both occurred during the same ... chase, both occurred at different times and in different places. Although the ... chase jeopardized all in the vicinity, [defendant's] threats of force upon police occurred on the interstate and *after* his endangerment of the construction workers on the median.

*Id*. at 512 (emphasis added).

Concerning double-counting *vel non*, the district court stated:

> The conduct ... may have all been in the same event, that is, temporally and geographically. But the conduct that endangered the Greens was different than the conduct that endangered Officer Cantu. And I do not think it's the same conduct, and I'm not going to make that finding.

Benitez endangered the Greens by speeding toward them in reverse. He later endangered Agent Cantu by speeding forward for almost three-quarters of a mile with the Agent trapped by the rear driver's-side window, attempting to "brush" the Agent against trees, and attempting to kick him out of the vehicle. The acts concerning the Greens and the Agent were separate and distinct both in time and place. The danger to the Agent arose after that to the Greens had ceased. Benitez' conduct affecting the Greens occurred

11

entirely within the checkpoint; that which affected Agent Cantu, on the highway nearly a mile away. *See* **Gillyard**, 261 F.3d at 512.

Moreover, this is not a case in which there was only one act endangering different sets of people. *See* **United States v. Hayes**, 135 F.3d 435, 438 (6th Cir. 1998)(§§ 3C1.2/3A1.2(b) double counting because single acceleration resulting in injuries to both law enforcement officer and child was "single, uninterrupted act"). As noted, at a minimum there were different sets of actions — speeding in reverse; stopping temporarily upon hitting the Greens' vehicle; and attempting later in forward to remove Agent Cantu from the vehicle.

Earlier in the sentencing hearing, the district court upheld Benitez' double-counting objection to the imposition of enhancements pursuant to both §§ 2L1.1(b)(5) and 3C1.2. Section 2L1.1(b)(5) forecloses the use of both Guidelines if the conduct underlying the § 2L1.1(b)(5) enhancement "related to fleeing from a law enforcement officer". U.S.S.G § 2L1.1, cmt. n.6. Notably, this language does not condition that double-counting issue on whether the conduct underlying both enhancements was the "same"; it only requires that the § 2L1.1(b)(5) conduct concern flight from a law enforcement officer. Although the district court observed that the conduct endangering the Greens (§ 2L1.1(b)(5) in the PSR) and that which endangered the pursuing Border Patrol Agents (§ 3C1.2 in the PSR) was "one course of conduct", that did not preclude it from

12

holding that the attempted murder of Agent Cantu entailed significantly different conduct from the earlier endangerment to the Greens.

Therefore, the district court did not clearly err by finding the §§ 3A1.2 (danger to Agent Cantu) and 3C1.2 (danger to Green family) actions were not the same conduct; nor did it err in its application of the Guidelines. *See* **Gillyard**, 261 F.3d at 510-11.

## ii.

Benitez summarily contends he did not "'willfully cause' reckless endangerment" to the Greens. Guidelines § 1B1.3 requires specific intent for enhancements under §§ 2 and 3 "[u]nless otherwise specified". Section 3C1.2 only requires that a defendant "*recklessly* created a substantial risk of death or serious bodily injury...." (emphasis added). Benitez need not have willfully caused such endangerment.

## c.

Next, Benitez contests the § 3A1.3 enhancement for restraining Agent Cantu. He maintains: the enhancement should not apply because the restraint was an element of the offense; and there was no evidence that he willfully caused the restraint.

## i.

The § 3A1.3 "restraint" enhancement is not to be applied "where the unlawful restraint of a victim is an element of the offense itself (*e.g.*, this adjustment does not apply to offenses

13

covered by § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint))". U.S.S.G. § 3A1.3 cmt. n.2. For determining whether "restraint" is an element of the offense, we look only to its statutory definition. *E.g.*, **United States v. Gaytan**, 74 F.3d 545, 560 (5th Cir.), *cert. denied*, 519 U.S. 821 (1996). "Restraint" is not an element of attempted murder. 18 U.S.C. §§ 1111, 1113.

ii.

In maintaining the evidence does not show he willfully caused Agent Cantu's restraint, Benitez cites Agent Garcia's testimony that "there's no way" Benitez could have activated/closed the rear window, thereby trapping Agent Cantu, because, had he moved his hand to do so, Agent Garcia would have been able to pull him out of the vehicle while being dragged in reverse. Benitez suggests it is more likely that Agent Garcia, in holding on to the driver's-side door, accidentally activated the rear window, thereby trapping Agent Cantu's arm.

Even though the district court accepted that version of events, it rejected the objection to the § 3A1.3 enhancement:

> It still doesn't get [past] the fact that [Benitez] drove for several minutes with Agent Cantu hanging there while he was trying to go into the woods and unrestrain Agent Cantu.
>
> Now he could have stopped at any moment and let Agent Cantu off, which he didn't do. So however he began restraint, [Benitez] continued the restraint and did it on purpose.

14

Guidelines § 1B1.3 states:  "Unless otherwise specified, ... adjustments in Chapter Three[] shall be determined on the basis of the following:  (1)(A) all acts and *omissions* committed ... or willfully caused by the defendant ... that occurred *during the commission of the offense of conviction....*" (Emphasis added.)  The district court correctly applied § 3A1.3, because Benitez did not stop and release Agent Cantu.  Moreover, the underlying finding that Benitez knew the Agent was trapped by the window was not clearly erroneous.

2.

The district court departed upward from the applicable Guidelines range of 188-235 months to 312 months (77 months). Benitez maintains the departure was based on invalid grounds and was unreasonable.

A departure is reviewed for abuse of discretion.  *E.g.*, ***Koon v. United States***, 518 U.S. 81, 96-98 (1996).  If the Guidelines fail to adequately account for aggravating circumstances surrounding an offense, an upward departure is permissible on that basis.  ***United States v. Schmeltzer***, 20 F.3d 610, 613 (5th Cir.), *cert. denied*, 513 U.S. 1041 (1994).  We review *de novo* whether a factor is "a permissible basis for departure".  ***United States v. Cade***, 279 F.3d 265, 270 (5th Cir. 2002) (quotation omitted); 18 U.S.C. § 3742(e).  Even if one or more of the reasons given to justify a departure is deemed invalid, it may nevertheless be

15

upheld if the remaining reasons justify it.  **United States v. Kay**, 83 F.3d 98, 101 (5th Cir.)(citations omitted), *cert. denied*, 519 U.S. 898 (1996).

a.

The district court's stated reasons for departing upward were the enhancements' failure to account for the risk of death or serious bodily injury to more than one person; the injuries sustained by the member of the Green family; and the disruption of governmental function caused by Benitez' conduct.  (As discussed *infra*, the Government also moved for an upward departure based on conduct that did not enter into the determination of the applicable Guideline range, *see* Guidelines § 5K2.21; but, it conceded at sentencing that this was subsumed within the above grounds.)

i.

Guidelines § 2A2.1, applicable to attempted murder, provides: "If the offense created a substantial risk of death or serious bodily injury to more than one person, *an upward departure may be warranted*".  U.S.S.G. § 2A2.1 cmt. n.3 (emphasis added).  Such a ground is obviously a "permissible basis for departure".  **Cade**, 279 F.3d at 270.

Benitez contends the enhancements pursuant to §§ 3A1.2 (danger to Agent Cantu) and 3C1.2 (danger to all those at the checkpoint, including the Green family) had already accounted for the risks Benitez imposed on those at the checkpoint.  The combined increase,

16

however, does not take into account the significant risks imposed on:  the entire Green family; other civilians at the checkpoint, including Benitez' daughter; Agent Garcia, when Benitez accelerated in reverse; or other Border Patrol Agents, who attempted to stop Benitez and save both Agents Garcia and Cantu.  The district court did not abuse its discretion in departing upward on this basis.

As noted, with regard to the risk to Agent Garcia, the Government also suggested § 5K2.21 (upward departure based on dismissed or uncharged conduct) as a basis for the departure in the light of Benitez' acquittal for the assault on Agent Garcia.  As also noted, the Government conceded at sentencing that the § 5K2.21 ground was subsumed within the other grounds for departure. Benitez contends the district court did not find by a preponderance of the evidence that Benitez intended to assault Agent Garcia.  *See* ***United States v. Watts***, 519 U.S. 148, 157 (1997).  This matters little in the § 2A2.1 analysis, which requires only a *substantial risk* to others.  For its § 5K2.21 analysis, the district court ruled the assault on Agent Garcia was a "foreseeable consequence" of Benitez' flight.  As a result, the court was entitled to determine that the preponderance of the evidence proved the conduct underlying the assault charge.  Thus, the district court did not abuse its discretion in departing upward based on that ground.

In any event, the court considered the § 5K2.21 issue within the context of the § 2A2.1 significant risk ground.  As a result,

17

"the district court would have imposed the same sentence absent" the § 5K2.21 factor. *See* **Cade**, 279 at 273.

                              ii.

Guidelines § 5K2.2 provides: "If significant physical injury resulted, the court *may increase the sentence* above the authorized guideline range.... *If the injury is less serious* ... a *less substantial departure would be indicated*". (Emphasis added.) Restated, physical injury is a permissible basis for departure.

As Benitez notes, the injuries to Agent Cantu were accounted for by the § 2L1.1(b)(6) enhancement. (In fact, the district court enhanced pursuant to § 2L1.1(b)(6) for the injuries to Agents Cantu *and Garcia*.) Benitez contends the abrasions, cuts, and bloody nose suffered by Agent Garcia and the Green family member do not rise to the level of § 5K2.2 "significant physical injury". *See* **United States v. Singleton**, 917 F.2d 411, 413-14 (9th Cir. 1990)(for upward departure, injuries must be more than "scratches, scrapes and bruises").

At sentencing, Benitez did not object to this basis for departure; therefore, we review under the narrow plain error standard. *E.g.*, **United States v. Alford**, 142 F.3d 825, 830 (5th Cir.), *cert. denied*, 525 U.S. 1003 (1998). In any event, as noted, § 5K2.2 provides for a "less substantial departure" when inflicted injuries are relatively minor. Benitez does not explain how the portion of the upward departure attributable to this basis was

18

anything other than the requisite "less substantial".  The district court did not commit plain error by departing upward based on these injuries.

iii.

Guidelines § 5K2.7 permits a departure "[i]f the defendant's conduct resulted in a significant disruption of a governmental function...."  Benitez contends an upward departure for such disruption was not appropriate because, "[a]lthough the operators of the checkpoint were occupied and inconvenienced by the events in question ... [they] were engaged in their normal responsibilities — that is, preventing the trafficking of illegal aliens and otherwise apprehending criminals who have entered the United States".  *See* **Singleton**, 917 F.2d at 414 (upward departure based on governmental disruption improper where primary function of police is to apprehend criminals).

Because Benitez did not object at sentencing to this basis, we again review only for plain error.  Moreover, a district court has "wide discretion" in departing upward pursuant to § 5K2.7.  **United States v. Bankston**, 182 F.3d 296, 316 (5th Cir. 1999), *rev'd sub nom. on other grounds*, 531 U.S. 12 (2000).  Obviously, Benitez' conduct required acts by Border Patrol Agents that went far beyond their normal checkpoint activities.  For example, normal operations had to be suspended while medical personnel responded to those injured.  The district court did not commit plain error.

19

As noted, based on Benitez' offense level of 33 and criminal history of IV, the sentencing range was 188 to 235 months. The district court stated it was departing upward one offense level, arriving at a guideline range of 210 to 262 months, within which it sentenced Benitez to the statutory maximum for the attempted murder offense, 240 months. Additionally, the court sentenced him to 60 months for the illegal transportation offense, which it imposed consecutive to the sentence for attempted murder; it also sentenced him to 120 months for the illegal reentry offense, 12 months of which were to run consecutive to the other sentences. As a result, Benitez' sentence was 312 months. That sentence would have been within the Guideline range for an offense level of 37. *See* U.S.S.G. § 5A (Sentencing Table). Therefore, the district court essentially departed by four offense levels, or 77 months.

Benitez contends: assuming the departure to an offense level of 34 was not an abuse of discretion, the decision to depart beyond the range for that level (210 to 262 months) was. Along this line, he maintains this additional 50-month departure was unexplained and arbitrary.

Although the district court explained it was increasing Benitez' offense level by one to account for the grounds for upward departure, the consecutive sentences further reflect the court's opinion that this case fell "outside the heartland of cases in

20

th[at] category". The court's failure to state it was departing from offense level 34 to 37, before imposing the 312-month sentence, was not an abuse of discretion. Along this line, Benitez does not explain how a departure of 77 months would constitute such an abuse. *See United States v. Davenport*, 286 F.3d 217, 221 (5th Cir. 2002) (13-year departure not abuse of discretion).

### 3.

For the first time on appeal, Benitez contends 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional in the light of *Apprendi*. He concedes this point is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), but presents it to preserve the issue for possible Supreme Court review.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*