RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0274P (6th Cir.)
File Name: 04a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 03-5138

JAMES SAMUEL HILL,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20028—Julia S. Gibbons, District Judge.

Argued: June 10, 2004

Decided and Filed: August 20, 2004

Before: MERRITT and DAUGHTREY, Circuit Judges;
NIXON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Needum L. Germany, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN

_____

[*] The Honorable John T. Nixon, United States District Judge for the
Middle District of Tennessee, sitting by designation.

DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Tony R. Arvin, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Randolph W. Alden, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Tony R. Arvin, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge. The defendant in this case pled
guilty to bank robbery. During that robbery the defendant
was shot twice by a security guard. The sole issue on appeal
is whether the district court should not have given him a
seven-level sentence enhancement for the discharge of a
weapon when the only shots fired were by the security guard.

**Facts and Procedural History**

On January 30, 2002, the defendant-appellant James
Samuel Hill robbed a bank in Lakeland, Tennessee. He did
so by pretending to wield a weapon in the pocket of his
jacket, though in fact he only had a hairbrush. As he started
to leave the bank, a security guard ordered him to halt. When
he turned around to face the guard, the guard fired multiple
shots, hitting him twice. Hill was apprehended, and no one
else was hurt.

Hill pled guilty to bank robbery, and was eventually
sentenced to 132 months of imprisonment and 3 years of
supervised release. This sentence was calculated based on his
prior criminal history, the base offense level for robbery, a
two-level enhancement because a financial institution was
involved, a one-level enhancement because of the amount of
money, a seven-level enhancement because a firearm was

discharged, and a three-level reduction for his accepting responsibility. The only issue on appeal is whether or not the seven-level enhancement for the discharging of a firearm was appropriate. The difference is substantial: Reversing the seven-level increase would require that Hill receive a sentence in the 63-78 month range instead of the 120-150 month range on which his sentence of 132 months was based.

For the reasons stated below, we **REVERSE** the district court and order that his sentence be recalculated without the seven-level enhancement.

**Discussion**

The district court's application of the seven-level enhancement was based on Section 2B3.1.(b)(2)(A) of the sentencing guidelines for robberies, which reads "If a firearm was discharged, increase by 7 levels." The government's primary argument is that the plain language of the guideline be followed: A firearm was discharged, so the increase should apply. The defendant, by contrast, argues that although the guidelines are written in the passive voice, they do not mean that the increase should be applied no matter who discharged the firearm and no matter what the circumstances.

At the outset, we reject the argument that just because the language is written in the passive voice the enhancement should apply in this case. According to that logic, Section 2B3.1.(b)(2)(C) would require a five-level enhancement so long as a gun were possessed, presumably even by a security guard or anyone else on the scene. Likewise, the guidelines would require a three-level enhancement if "a dangerous weapon was otherwise. . .possessed," § 2B3.1.(b)(2)(E), and a two-level enhancement if "a threat of death was made," § 2B3.1.(b)(2)(F). Common sense counsels against such a reading of the statute.

Indeed, once we place the language in its intended context, the plain language of the guidelines as a whole supports the defendant's reading of the statute. The guidelines provide that "relevant conduct" for the purposes of determining the specific offense characteristics "shall be determined on the basis of the following:"

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or *willfully caused* by the defendant, and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a) (emphasis added).

In this case, there is no showing that the defendant "willfully caused" the guard to shoot him. Although such a circumstance is not unimaginable, it certainly cannot be inferred from the conviction for the underlying offense alone. And although the trial court judge may or may not have been correct that there was "great foreseeability" that "some action might be taken against" the defendant during the commission of this crime, App. 45, the guidelines only attribute reasonably foreseeable acts to the defendant when they are "in furtherance of" a "jointly undertaken criminal activity." Clearly the security guard's actions do not fall in this category.

Although this is a case of first impression in the Sixth Circuit, the Seventh Circuit has reached the same conclusion

in a similar case. In *United States v. Gordon*, 64 F.3d 281 (7th Cir. 1995), in facts very similar to these, a defendant was shot by a security guard during a bank robbery. Even though in that case the robber had actually physically elbowed the guard and tried to run away, the court held that the enhancement should not apply. *Id.* at 283 ("[A] defendant cannot be said to have induced or willfully caused a guard to discharge a firearm simply because he committed the underlying offense of robbery, for that by itself shows no desire or intent regarding the firearm discharge."). The *Gordon* court also noted that reasonable foreseeability was not sufficient for the enhancement to apply under the guidelines with respect to the actions of third parties. *Id.*

The United States points to two cases in two other circuits that allegedly support its reading of the guidelines. However, even if we were to find the reasoning in those cases persuasive, they are easily distinguishable on the facts. In *United States v. Roberts*, 203 F.3d 867 (5th Cir. 2000), a policeman had laid down his gun to cuff two suspects when one of them lunged for it and a struggle ensued. During the struggle one of the suspects started striking the policeman in the face. *Id.* at 868. Fearing they would take the gun from him, the policeman attempted to empty his gun into the air, managing to get two shots off. *Id.* The court upheld the enhancement, distinguishing the case from *Gordon* by reasoning that the *Roberts* suspect willfully caused the discharge of the weapon by wrestling for it and attacking the policeman. *Id.* at 870. And in *United States v. Williams*, 51 F.3d 1004 (11th Cir. 1995), the same enhancement was upheld when a would-be carjacker was fired upon by a passenger in the car. However, in that case the defendant himself fired at the car as it sped away, an act the court ruled was during the commission of the offense. *Id* at 1008. The *Williams* court did opine that carjacking with a weapon drawn could be considered to cause a victim to fire his own weapon for the purposes of the offense level, *id.* at 1011, but such a ruling was unnecessary dicta, and in any case we reject that reasoning for the reasons stated above.

Because there has been no showing that the defendant willfully caused the discharge of the weapon, and because reasonable foreseeability is not relevant for actions by third parties not in furtherance of a joint undertaking, the district court is **REVERSED** with respect to the seven-level enhancement, and the case is **REMANDED** for hearings consistent with this opinion.