[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14798

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 15, 2012
JOHN LEY
CLERK

D.C. Docket No. 9:10-cr-80063-KAM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KELSEY JAMES MCQUEEN,
a.k.a. Calsey James McQueen,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 15, 2012)


Before DUBINA, Chief Judge, MARCUS and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Appellant Kelsey James McQueen pleaded guilty to three counts of attempted alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of failing to obey an order by federal law enforcement to heave to their vessel in violation of 18 U.S.C. § 2237(a)(1). At sentencing, over McQueen's objection, the district court applied an enhancement pursuant to U.S.S.G. § 2L1.1(b)(5)(A)[1] because a firearm was discharged by law enforcement. McQueen appeals his sentence, contending the district court committed procedural error by incorrectly calculating the advisory Guidelines range. We affirm.

## I. FACTUAL BACKGROUND

The facts are undisputed. On April 28, 2010, at 11 p.m., a U.S. Customs and Border Protection (CBP) patrol aircraft spotted a boat headed west towards Palm Beach County, Florida. The boat matched the description of the Mary Carla, a 33-foot vessel suspected of smuggling aliens or narcotics into the United States. CBP patrol boats interdicted the Mary Carla approximately 11.8 nautical miles offshore, activated their blue lights, sirens, and spotlights, and commanded the Mary Carla to stop. McQueen, the operator of the Mary Carla, attempted to flee, turning the vessel east and away from land. CBP officers pursued McQueen for

---

[1] All references to the Sentencing Guidelines are to the Guidelines effective November 1, 2009.

three minutes.  Because McQueen continued to flee, officers fired two illuminated warning shots.  The warning shots were followed closely by the launching of four "pepper balls" into the Mary Carla's cabin.  Three more minutes passed, and McQueen continued to flee.  CBP officers again fired two more warning shots in the direction of the Mary Carla.  McQueen still did not comply, forcing the officers to board the Mary Carla while it was moving.  A search of the Mary Carla discovered 14 aliens on board, none of whom had permission to enter the United States.

## II.  STANDARD OF REVIEW

McQueen alleges the district court committed procedural error by improperly calculating his advisory Guidelines range.  We review the reasonableness of sentencing procedures under an abuse-of-discretion standard.  *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008).  A court that misinterprets or misapplies the Guidelines inherently abuses its discretion.  Therefore, we review the district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo.  *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011); *Ellisor*, 522 F.3d at 1273 n.25; *United States v. Campbell*, 491 F.3d 1306, 1315 (11th Cir. 2007).

III.  DISCUSSION

The Guideline applicable to alien smuggling is U.S.S.G. § 2L1.1.

Subsection 2L1.1(b)(5)(A) requires an enhancement if "a firearm was

discharged."[2]  The Guidelines limit application of the enhancement to firearm

discharges "committed, aided, abetted, counseled, commanded, induced, procured,

or willfully caused by the defendant."  U.S.S.G. § 1B1.3(a)(1)(A).  We must

decide whether McQueen "induced" the discharge of a firearm.

In *United States v. Williams*, this Court affirmed the application of the

enhancement in the robbery context by concluding that discharges were "induced"

by the defendant's conduct.  51 F.3d 1004, 1011 (11th Cir. 1995), *abrogated on

other grounds by Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215 (1999).

Williams attempted a carjacking by approaching a truck and pointing his gun

inside.  In response, an occupant of the truck shot at Williams.   Citing

§ 1B1.3(a)(1)(A), this Court held that Williams induced the occupant to fire by

approaching the truck with his weapon drawn, making the occupant's discharge

attributable to Williams.  *Id.*[3]

---

[2] A "firearm" is defined as "any weapon . . . which will . . . expel a projectile by the
action of an explosive."  U.S.S.G. § 1B1.1 cmt. n.1(G).  The parties agree a firearm discharged
the illuminated warning shots.

[3] In *Williams*, we provided two rationales to support our application of the discharge
enhancement.  Both are binding holdings.  *See, e.g.*, *Bravo v. United States*, 532 F.3d 1154,

We did not define "induced" in *Williams*. Because the Guidelines also do not define "induced," we must give the term its ordinary meaning. *United States v. Digiorgio*, 193 F.3d 1175, 1178 (11th Cir. 1999). To "induce" means "[t]o lead (a person), by persuasion or some influence or motive that acts upon the will, to . . . some action, condition, belief, etc." or "[t]o bring about, bring on, produce, cause, give rise to." *The Oxford English Dictionary* 887-88 (2d ed. 1989); *see also The Am. Heritage Dictionary of the English Language* 871 (New College Ed. 1981) (defining "induce" as "[t]o lead or move by influence or persuasion; to prevail upon," or "[t]o stimulate the occurrence of; cause"); *Webster's Third New Int'l Dictionary* 1154 (3d ed. 1976) (defining "induce" as "to move and lead (as by persuasion or influence)" or "to inspire, call forth, or bring about by influence or stimulation" or "to bring on or bring about : EFFECT, CAUSE"). However, we must apply the ordinary meaning most consistent with our decision in *Williams*. Williams did not persuade or prevail upon his victim to discharge a weapon, or call forth the discharge. Instead, Williams brought about, produced, or caused his victim to discharge a firearm by approaching the truck with a drawn firearm. Given our use of "induced" in *Williams*, we must attribute to a defendant the acts

1162-63 (11th Cir. 2008).

5

or omissions of another that are brought about, produced, or caused by the defendant's conduct.

Neither party disputes that we must follow *Williams*.[4] Instead, McQueen claims that his actions did not actually induce the discharges. McQueen contends the officers' discharges were hasty, reckless, and unnecessary, and that no one, including McQueen, would consider firing on the Mary Carla to be appropriate. The essence of McQueen's argument is that because it was not reasonably foreseeable that his actions would result in law enforcement discharging a firearm, he did not induce the discharge. The Government contends the discharges were a reasonable response to McQueen's conduct, and are therefore attributable to McQueen. Thus, the parties agree that the issue in this case is whether law enforcement's discharge of illuminated warning shots was a reasonably foreseeable result of McQueen's conduct; that is, whether McQueen legally caused the discharges.

---

[4] McQueen did not cite any authority contradicting the holding of *Williams*. However, we are aware other courts of appeals have disagreed. *See, e.g.*, *United States v. Hill*, 381 F.3d 560, 562-63 (6th Cir. 2004); *United States v. Gordon*, 64 F.3d 281, 283-84 (7th Cir. 1995). *But see United States v. Roberts*, 203 F.3d 867, 870 (5th Cir. 2000); *United States v. Molina*, 106 F.3d 1118, 1122-23 (2d Cir. 1997). We are bound to follow *Williams*. *See Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." (citation omitted)).

McQueen attempted to smuggle 14 aliens into the United States using a 33-foot boat in the dead of night. CBP patrol boats and aircraft interdicted his boat twelve nautical miles from shore. CBP officers activated their patrol boats' blue lights, sirens, and spotlights. Instead of stopping, McQueen turned his vessel away from land and fled. CBP patrol boats pursued McQueen for three minutes, repeatedly ordering him to stop his vessel. When he did not stop, CBP officers fired two illuminated warning shots. The discharges were not accidental. Rather, they were measured responses to McQueen's continued criminal conduct. As in *Williams*, McQueen's actions induced, i.e. brought about, produced, or caused, the discharge of a firearm. Contrary to McQueen's assertions, a "reasonable" alien smuggler who flees from law enforcement on the high seas would foresee the use of illuminated warning shots to gain compliance.

## IV.  CONCLUSION

Our de novo review of the evidence leads us to conclude McQueen's actions induced law enforcement to discharge their firearms because law enforcement's response was a reasonably foreseeable result of McQueen's conduct. We affirm McQueen's 84-month sentence.

**AFFIRMED.**