[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13862
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00188-EAK-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE FRANCISCO GUERRA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 8, 2013)

Before MARTIN, JORDAN, and FAY, Circuit Judges:

PER CURIAM:

Jose Francisco Guerra appeals his 41-month sentence for conspiring to transport 25 or more illegal aliens and for aiding and abetting the bringing in and harboring of illegal aliens. *See* 8 U.S.C. § 1324(a)(1)(A)(v)(I)-(II). Mr. Guerra

argues that the district court erred when it applied a nine-level enhancement to his offense level under U.S.S.G. § 2L.1.1(b)(2)(C) for transporting 100 or more illegal aliens. After careful review, we find no error and affirm.

Mr. Guerra is a Mexican citizen who has lived in the United States illegally and been deported to Mexico on three separate occasions. Sometime before September of 2010, Mr. Guerra formed an alien smuggling organization that was responsible for transporting illegal aliens within the United States. In 2011, federal agents made four separate arrests of individuals who were transporting illegal aliens. Once apprehended, all of those individuals told the arresting officers that they were working for Mr. Guerra.

On June 9, 2011, Mr. Guerra was taken into state custody and eventually interviewed by Agent Robert Vadasz from Border Patrol and Special Agent Jennifer Silliman from Immigration and Customs Enforcement. As a fluent Spanish speaker, Agent Vadasz conducted the interview while Agent Silliman—who understands Spanish but does not consider herself fluent—took notes. During the interview, Mr. Guerra informed the agents that he was responsible for operating a stash house residence for illegal aliens while they awaited their transportation, giving vehicles to seven to eight drivers working on his behalf, and ultimately handing off the illegal aliens to them. He also indicated that his

operation, all told, transported or arranged transport for over 100 but less than 1,000 illegal aliens.

All of these facts were elicited at Mr. Guerra's sentencing hearing through the testimony of Agent Silliman. After all the evidence was presented, the district court ruled, over Mr. Guerra's objection, that the government had met its burden of proof and applied a nine-level enhancement to Mr. Guerra's offense level for transporting 100 or more illegal aliens. On appeal, Mr. Guerra argues that it was improper for the district court to rely on Agent Silliman's testimony because it did not bear sufficient indicia of reliability. In short, Mr. Guerra asserts that Agent Silliman's testimony is unreliable because his statements were in Spanish, Agent Silliman is not fluent in Spanish, and there is ambiguity as to whether he stated that he transported over 100 "people" or 100 "illegal aliens."

We review the district court's findings of fact for clear error. *See United States v. McQueen*, 670 F.3d 1168, 1169 (11th. Cir. 2012. The facts supporting a sentencing guideline enhancement need only be established by a preponderance of the evidence. *See United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010).

In this case, the district court did not clearly err when it made the factual finding that that Mr. Guerra admitted to transporting, or arranged transport for, 100 or more illegal aliens. First, Agent Silliman testified that, although not fluent, she understood Spanish enough to comprehend approximately 90% of what she heard

3

in the interview, took notes based on what she heard, and reviewed her report with Agent Vadasz to make sure that she did not misunderstand something that was said. These facts provided a sufficient basis for the district court to credit Agent Silliman's recollection of the interview with Mr. Guerra. Second, Agent Silliman's understanding of Mr. Guerra's statement is amply supported by other evidence in the record. For example, when the drivers who worked for Mr. Guerra were arrested, all of the passengers were illegal aliens, and the drivers admitted that they were transporting illegal aliens. In addition, Agent Silliman testified that Mr. Guerra never made any mention of a legitimate transport company during his interview with federal agents. Third, Agent Silliman's testimony removes any doubt as to whether she could have simply misunderstood Mr. Guerra. On direct examination, the government asked Agent Silliman whether there was "any doubt in [her] mind that [Mr. Guerra] was talking about illegal aliens as opposed to lawfully situated aliens in the United States," and she clearly responded, "No."

Under these circumstances, it was not clear error to credit Agent Silliman's testimony and apply a nine-level enhancement to Mr. Guerra's offense level under U.S.S.G. § 2L1.1(b)(2)(C) based on his own admission that he transported 100 or more illegal aliens.

**AFFIRMED**.