[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10333
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60203-DTKH-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VITO SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 27, 2013)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

While conducting air surveillance of Bimini, Bahamas, after receiving

information about an alien smuggling venture, U.S. Customs and Border Protection

("CBP") had witnessed two vessels depart from Bimini at around the same time, traveling in tandem toward the United States.  When the CBP attempted to stop appellant Vito Smith's vessel by activating its blue lights and siren, Smith refused to heave to and began making erratic and evasive maneuvers.  Agents fired warning flares and then disabling rounds into one engine.  Once boarded, agents discovered ten aliens with Smith.  None of the eleven had permission to enter the United States.

Smith now appeals his 37-month sentence, imposed at the low end of the guideline range after he pled guilty to one count of conspiracy to induce an alien to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I).  Smith argues that his sentence was procedurally unreasonable because the district court incorrectly calculated his advisory guideline range.  Specifically, he asserts that the district court improperly relied on United States v. McQueen, 670 F.3d 1168 (11th Cir.), cert. denied, 133 S. Ct. 225 (2012), to enhance his advisory guideline range by seven levels based on CBP's discharge of a firearm while attempting to stop his alien-smuggling vessel.  Smith further argues that the district court's reliance on McQueen was in error because McQueen conflicts with United States v. Clavijo, 165 F.3d 1341 (11th Cir. 1999), and therefore was wrongly decided.  After review, we affirm.

2

I.

We review the reasonableness of a sentence under a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007).  The party challenging the sentence has the burden to establish that the sentence is unreasonable. United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2010).  In reviewing sentences for reasonableness, we determine, first, whether the district court committed any "significant procedural error," and second, whether the sentence was "substantively reasonable under the totality of the circumstances." Id.

We must consider several factors to determine if a sentence is procedurally reasonable, including, inter alia, whether the district court improperly calculated the guideline range. Gall, 552 U.S. at 51, 128 S. Ct. at 597.  "With respect to sentencing guideline issues, this court reviews purely legal questions de novo, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1136–37 (11th Cir. 2004) (quotation omitted).

II.

Section 2L1.1 of the Sentencing Guidelines provides the base offense level and the specific offense characteristics for smuggling unlawful aliens. See U.S.S.G. § 2L1.1(a), (b). In relevant part, § 2L1.1(b) provides that "[i]f a firearm

3

was discharged, increase by 6 levels, but if the resulting offense level is less than level 22, increase to level 22." Id. § 2L1.1(b)(5)(A). Neither § 2L1.1 nor its Application Notes specify who must discharge the firearm. However, pursuant to § 1B1.3(a):

> [S]pecific offense characteristics . . . shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>     (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

Id. § 1B1.3(a)(1)(A)–(B).

The Application Notes to § 1B1.3 explain that "[t]he requirement of reasonable foreseeability applies only in respect to the conduct . . . of others under subsection (a)(1)(B). It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A)." Id. § 1B1.3, cmt. n.2.

Under the prior precedent rule, a panel of this Court is "bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court." United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation omitted). We have "categorically reject[ed] any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time," including an "overlooked reason" exception. Smith v. GTE Corp., 236 F.3d 1292, 1303 (11th Cir. 2001). However, when a later decision conflicts with an earlier opinion, we apply the "earliest case" rule, in which the panel "look[s] to the line of authority containing the earliest case." Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir. 2003) (quotation omitted). Therefore, we must assess whether McQueen and Clavijo in fact conflict with respect to their treatment of § 1B1.3(a)(1)(A) and (B).

In McQueen, the defendant, who was smuggling aliens into the United States, attempted to flee when CBP interdicted his vessel off the U.S. coast. 670 F.3d at 1169. CBP used lights, sirens, and spotlights, and eventually fired two warning flares, four "pepper balls," and two more warning flares before CBP officers boarded the still-moving vessel. The district court applied the firearm-discharge enhancement found at U.S.S.G. § 2L1.1(b)(5)(A). Id. We determined that under § 1B1.3(a)(1)(A), application of the enhancement was only proper if the defendant "committed, aided, abetted, counseled, commanded, induced, procured,

or willfully caused" the firearm discharge.  Id. at 1170.  We defined "induced" as "brought about, produced, or caused," and held that we "must attribute to a defendant the acts or omissions of another that are brought about, produced, or caused by the defendant's conduct."  Id.  Because CBP fired warning flares in response to McQueen's conduct, his actions induced the discharge of a firearm.  Id. at 1171.

Previous to McQueen, in Clavijo, we held that, for purposes of safety-valve eligibility under U.S.S.G. § 5C1.2, the defendant could not be held responsible for the reasonably foreseeable possession of a firearm by co-conspirators because § 5C1.2 specified that the defendant must have either possessed the firearm or "induce[d] another participant" to possess the firearm, language which would have been unnecessary if § 5C1.2 contemplated the constructive possession described in § 1B1.3(a)(1)(B).  165 F.3d at 1343.  Moreover, the Application Notes to that section stated that the defendant was only accountable for his own conduct or for conduct that he "aided or abetted, counseled, commanded, induced, procured, or willfully caused," language that tracked § 1B1.3(a)(1)(A).  Because of the plain language of § 5C1.2 and the use of language from § 1B1.2(a)(1)(A), we reasoned that § 1B1.3(a)(1)(B)—relating to "reasonably foreseeable" acts and omissions of others in furtherance of jointly undertaken criminal activity—was inapplicable to

determinations of safety-valve eligibility because the Application Notes "implicitly reject[ed]" that language by only using the language from § 1B1.3(a)(1)(A).  Id.

Smith's sentence was procedurally reasonable, and the district court did not err in imposing the firearm-discharge enhancement.  Contrary to Smith's assertion, McQueen and Clavijo do not conflict.  McQueen related to U.S.S.G. § 2L1.1(b)(5)(A)—the same provision used to determine Smith's enhancement— while Clavijo related to § 5C1.2.  McQueen, 670 F.3d at 1170; Clavijo, 165 F.3d at 1343.  Furthermore, McQueen defined "induced" in the context of applying § 1B1.3(a)(1)(A) to § 2L1.1(b)(5)(A), whereas Clavijo excluded application of § 1B1.3(a)(1)(B) to safety-valve eligibility based on language specific to that Guidelines section.  McQueen, 670 F.3d at 1170; Clavijo, 165 F.3d at 1343. Smith's case, then, is clearly governed by our holding in McQueen, a holding which Clavijo does not call into doubt.

Smith's argument that McQueen's use of the "reasonable foreseeability" standard should not bind subsequent panels because the parties assumed that it was the correct standard is also meritless.  Even if McQueen did apply a "reasonable foreseeability" standard, we have rejected an "overlooked reason" exception to the prior precedent rule.  GTE Corp., 236 F.3d at 1303.

Thus, the district court did not err by increasing Smith's offense level pursuant to U.S.S.G. § 2L1.1(b)(5)(A) based on CBP's discharge of a firearm.

7

Smith "brought about, produced, or caused" CBP's discharge by using erratic and evasive maneuvers when CBP used its lights, sirens, warning flares, and disabling shots to stop his vessel.  See McQueen, 670 F.3d at 1169-70.  Accordingly, we affirm Smith's sentence.

**AFFIRMED.**