[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11723
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cr-10028-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DIOSELIS FUENTES-NODARSE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 18, 2015)

Before JULIE CARNES, FAY and KRAVITCH, Circuit Judges.

PER CURIAM:

Dioselis Fuentes-Nodarse appeals his sentence of 37 months' imprisonment for conspiracy to encourage and induce aliens to enter the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(I), and failure to obey an order to heave a vessel, in violation of 18 U.S.C. § 2237(a).  After a thorough review of the record, we affirm.

I.

Fuentes-Nodarse and his cousin Ledian Acosta-Gonzalez were indicted for conspiring to encourage and induce aliens to enter the United States unlawfully and failing to obey an order to heave a vessel.[1]  Fuentes-Nodarse ultimately pleaded guilty to the conspiracy count.[2]  At the change-of-plea hearing, Fuentes-Nodarse admitted that in early September 2013, he and Acosta-Gonzalez traveled from Las Vegas, Nevada, to the Florida Keys, where they met a man named "KAPLRO" and agreed to smuggle people from Cuba to the United States in exchange for more than $2,000.  Fuentes-Nodarse would receive half of the funds.

That same night, Fuentes-Nodarse and Acosta-Gonzalez loaded a boat with fuel drums and enough food and water to feed approximately 30 people and headed

---

[1]  Acosta-Gonzalez was also charged with resisting a customs and border protection officer.  He proceeded to trial, after which he was acquitted of resisting an officer and convicted of the remaining charges.  He was sentenced to 60 months' imprisonment.

[2]  We note that, although Fuentes-Nodarse's plea agreement contained a waiver-of-appeal provision that would have precluded this appeal, the government does not seek to invoke the waiver.  In fact, neither the government nor the appellant even mention the waiver provision in their briefs.  Accordingly, we will address the merits of the appeal.  *See United States v. Valnor*, 451 F.3d 744, 745 n.1 (11th Cir. 2006) (addressing the merits where the government did not seek to enforce the waiver-of-appeal provision).

south toward Cuba.  Fuentes-Nodarse was in the bow of the boat.  Although they were traveling at night, when they were about one and a half miles offshore, they turned off the boat's navigation lights and continued their journey.

Agents from Customs and Border Protection (CBP) then activated their boat's lights and siren, and issued verbal commands for the men to stop.  Instead, the two engaged in evasive maneuvers, and at one point, Acosta-Gonzalez turned the boat to collide with the CBP vessel.  During the attempt to evade CBP, Fuentes-Nodarse "lay prone in the bow [of the boat] in [an] attempt to keep it on plane."  The CBP agents fired warning shots and ultimately disabled the boat by discharging a 12-gauge shotgun.

Based on this admitted conduct, the probation officer calculated Fuentes-Nodarse's offense level to include a 10-level increase under U.S.S.G. § 2L1.1(b)(5)(A) because a firearm was discharged, and a 2-level increase under § 2L1.1(b)(6) because the offenses created a substantial risk of death or serious bodily injury.  Fuentes-Nodarse's advisory guidelines range was 37 to 46 months' imprisonment.  Fuentes-Nodarse objected to the enhancements, but the district court overruled the objections and sentenced him to a total of 37 months' imprisonment.  This is Fuentes-Nodarse's appeal.

## II.

Fuentes-Nodarse raises two arguments on appeal.  First, he contends that the district court erred when it applied a ten-level increase under § 2L1.1(b)(5)(A) because a firearm was discharged by law enforcement, and not by either defendant. Fuentes-Nodarse notes that he did not personally induce the discharge because he was not the driver of the boat while it fled from law enforcement.  Second, Fuentes-Nodarse argues that the district court erred when it applied a two-level increase under § 2L1.1(b)(6) because his codefendant was in control of the boat when it took dangerous evasive actions to avoid being apprehended.

We review the district court's factual findings for clear error, and its interpretation and application of the Sentencing Guidelines *de novo*.  *United States v. McQueen*, 670 F.3d 1168, 1169 (11th Cir. 2012).  We may affirm the district court on any ground supported by the record.  *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

## III.

Section 2L1.1 provides the base offense level and the specific offense characteristics for smuggling unlawful aliens.  U.S.S.G. § 2L1.1(a), (b).  Relevant to this appeal, § 2L1.1(b) provides that "[i]f a firearm was discharged, increase by 6 levels, but if the resulting offense level is less than level 22, increase to level

4

22."[3] *Id.* § 2L1.1(b)(5)(A).  Neither § 2L1.1 nor its Application Notes specifies

who must discharge the firearm.  But § 1B1.3(a) provides:

> [S]pecific offense characteristics . . . shall be determined on the basis
> of the following:
>
> (1)    (A)    all acts and omissions committed, aided, abetted,
>                counseled, commanded, induced, procured, or willfully
>                caused by the defendant;
>        . . .
>
> that occurred during the commission of the offense of conviction, in
> preparation for that offense, or in the course of attempting to avoid
> detection or responsibility for that offense[.]

*Id.* § 1B1.3(a)(1)(A).

Fuentes-Nodarse's arguments are without merit.  Although the Guidelines

do not define "induce," in *McQueen*, we explained that "induced"—as it is used in

§ 1B1.3(a)(1)(A)—means "brought about, produced, or caused by the defendant's

conduct."  670 F.3d at 1170-71.  We then concluded that, under § 2L1.1(b)(5)(A),

a defendant can be held accountable for law enforcement's discharge of a firearm

when the defendant "induced" that discharge by fleeing despite law enforcement's

use of lights and sirens.  *Id.*  Noting that these discharges "were measured

responses to [the defendant's] continued criminal conduct," we explained that a

defendant induces the officers to discharge a firearm because "a 'reasonable' alien

---

[3]  Here, Fuentes-Nodarse's offense level was 12, thus he received a 10-level increase to offense
level 22.

5

smuggler who flees from law enforcement on the high seas would foresee the use of illuminated warning shots to gain compliance." *Id.* at 1171.

Here, Fuentes-Nodarse's arguments that § 2L1.1(b)(5)(A) only applies when a firearm is discharged by a participant in the criminal activity, and that the enhancement should not apply in this case because the discharge was a volitional act of the CBP agents are foreclosed by *McQueen*.

Moreover, although the defendant in *McQueen* was the driver of the boat, we see no reason the guidelines increase would not apply to a defendant, like Fuentes-Nodarse, who participated in other ways in the conduct leading to the gunfire. Fuentes-Nodarse admitted that he remained in the bow to help keep "it on plane" while he and his cousin attempted to evade CBP. This active participation in the boat's flight further justifies the enhancement under § 2L1.1(b)(5)(A).[4]

IV.

Section 2L1.1 provides for a sentence enhancement where the offenses created a substantial risk of death or serious bodily injury. U.S.S.G. § 2L1.1(b)(6). "[A] defendant's base offense level and specific offense characteristics are determined, in part, from his offense of conviction, plus all relevant conduct." *United States v. Zaldivar*, 615 F.3d 1346, 1350 (11th Cir. 2010). Relevant conduct, under the Guidelines, "includes 'all reasonably foreseeable acts and

---

[4]   Because we conclude that the enhancement was proper under § 1B1.3(a)(1)(A), we need not address whether it was proper under § 1B1.3(a)(1)(B).

omissions of others in furtherance of the jointly undertaken criminal activity.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(1)(B)).

"Whether a co-conspirator's act was reasonably foreseeable to the defendant so that it qualifies as relevant conduct is a question of fact reviewed for clear error." *United States v. Valarezo-Orobio*, 635 F.3d 1261, 1264 (11th Cir. 2011). What is "'[r]easonably foreseeable' has never been limited to actions that were expressly agreed to by the co-conspirators." *United States v. Cover*, 199 F.3d 1270, 1275 (11th Cir. 2000) (quotation omitted), *superseded by regulation on other grounds as recognized in United States v. Chavers*, 416 F. App'x 863, 866 (11th Cir. 2011) (unpublished). Rather, "an act is reasonably foreseeable if it is a necessary or natural consequence of the unlawful agreement." *Id.* (internal quotation marks and citation omitted).

We agree with the district court's conclusion that an enhancement under § 2L1.1(b)(6) applies where the boat used to smuggle aliens traveled on the open seas, at night, at a high rate of speed and without navigation lights, especially when that boat employs evasive maneuvers and intentionally strikes another vessel.

Moreover, because it was reasonably foreseeable that Acosta-Gonzalez would attempt to flee from law enforcement, and because Fuentes-Nodarse is accountable for the reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, the district court properly applied a two-level

enhancement under § 2L1.1(b)(6) for creating a substantial risk of death or serious bodily injury.

**AFFIRMED.**